

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-83,185-07, -08, -09, -10, -11 & -12

### EX PARTE ORIAN LEE SCOTT, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### CAUSE NOS. 20462 HC-3, 20462 HC-4, 20463 HC-3,
### 20463 HC-4, 20464 HC-3 & 20464 HC-4
### IN THE 6TH DISTRICT COURT
### LAMAR COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, ALCALA, RICHARDSON, YEARY, NEWELL, and WALKER, JJ., joined. KEEL, J., concurred.

### O P I N I O N

Orian Lee Scott was convicted of nine offenses in three separate indictments and was sentenced to a total of 100 years' confinement.[1] We filed and set these writ applications to decide whether his counsel was ineffective at the punishment stage of

---

[1]Each indictment was identical except that they named different victims. In each indictment, Scott was charged with one count of possession of child pornography, one count of inducing a sexual performance by a minor, and one count of producing or promoting a sexual performance by a child.

trial. We will deny relief.

## I. BACKGROUND

### A. Facts

In August 2003, Applicant, Orian Lee Scott, moved to Maxey, outside of Paris, Texas, and he started asking around town for a few boys to help him move and unpack boxes. A mother of twin teenage boys heard about Scott's inquiries and got in touch with him.[2] He told her that he was looking to hire some teenage kids to help out around his house. He also told her that he would pay her boys ten dollars an hour each. The mother thought that was an exceptionally high wage, and she agreed to let her kids work for Scott the rest of the summer.[3] The boys worked Monday through Friday. Once school began, however, the job was supposed to end, but Scott said that he still needed help around the house maintaining his yard, painting his barn, and bathing his dogs. The boys' mother agreed to let her kids work on Saturdays during the school year. They worked about six hours each Saturday. Around Thanksgiving, Scott asked them whether they had a friend that could also help around the house. They said that they did, and their friend started

---

[2]The mother learned about Scott's offer through her husband. Although the family lived in Fort Towson, Oklahoma, her husband worked in Paris for about 9 years.

[3]One of the victims testified that, after he worked for Scott, he worked at Sonic and got paid the minimum wage of about five dollars per hour, and that he has never again been paid ten dollars per hour to work since then. Another boy testified that the work was not worth what they were getting paid and that there was not enough work to justify hiring three boys. The record also shows that the boys were "on the clock" even when they were not working, such as when they were sitting around playing on Scott's computer or showering.

working for Scott too.

When the kids first started bathing Scott's dogs in the summer, they would do it outside and usually did not wear shirts. On one occasion, Scott videotaped them washing his dogs, allegedly because he needed to "test" an old camera. As the days got colder, however, Scott told the boys to bathe the dogs in his guest bathroom. He even suggested to one of them that the dogs would not mind if the kids bathed them in the nude. The boy refused. Later, Scott provided each of them with swim trunks to use so that their clothes would not get dirty when they washed the dogs.[4]

After awhile, Scott encouraged the kids to take a shower after bathing the dogs and doing yard work. The shower in Scott's guest bathroom had no curtain, and Scott never installed one, even though the boys took showers there almost every week for over six months.[5] Scott told them that, if they cleaned up (i.e., showered at his house), he would treat them to dinner and a movie.[6] One of the twins testified that he and his brother thought that the bathroom was a little creepy and that they even looked for a camera at one point but never found one. Unfortunately, there was a camera. The clock radio in the

---

[4]There was testimony that this was unnecessary because the boys could bathe the dogs without getting their clothes dirty. There was also testimony questioning why Scott had four pairs of swim trunks that fit the kids he hired.

[5]One boy testified that when he asked Scott why he did not have a shower curtain, Scott replied that he did not need one. Another boy testified that Scott evaded the question when asked.

[6]Scott took the boys to a movie and dinner almost every weekend that they worked for him after school started, and he paid for everyone's dinner and movie tickets even though the boys earned about $60 per day working for Scott.

bathroom had a hidden camera in it, which was pointed directly at the bathtub. It was later discovered that the hidden camera was hooked up to a VCR system and that Scott had filmed almost every shower the boys had taken. The videos that Scott recorded showed that the boys would often masturbate while they showered. They also showed that Scott adjusted the hidden camera numerous times to get a better angle, and one of the videos even showed Scott in the bathroom simulating masturbation to check the angle of the camera. Scott also installed a light in the bathroom that was above the shower so that he could see better. After he was arrested, police discovered a newly drilled hole in the bathroom opposite the hidden camera that would have given a camera operator a full-frontal view of the children while showering and masturbating.

Scott would occasionally allow the boys to use his computer to play games, and one day while on the computer, the twins found pornographic images of young boys. They told their mother, who later called the police. The police searched Scott's home and seized recordings of the kids masturbating in the shower, thousands of digital images of child pornography on Scott's computer, thousands of images of child pornography Scott kept on physical media at his house (e.g., DVDs, CDs, over 400 floppy disks, etc.), and photographs in a shoe box of underage teenage boys in swimsuits at what appeared to be a pool party. It looked like the photographs were taken through a window or sliding glass door. Police also noticed that Scott was almost finished building a swimming pool at his house.

**B. Procedural Posture**

In three separate indictments, Scott was charged with three counts of inducing a sexual performance by a child, three counts of producing or promoting a sexual performance by a child, and three counts of possession of child pornography. Each indictment referred to a different victim. Scott pled guilty to the child-pornography charges but went to trial on the other counts. The jury found him guilty of all six of the remaining charges. For each of the inducing-a-sexual-performance convictions, the jury sentenced Scott to twenty years' confinement (for a total of sixty years); for each of the producing-or-promoting convictions, the jury sentenced Scott to ten years' imprisonment (for a total of thirty years); and for each of the possession-of-child-pornography convictions, the jury sentenced Scott to ten years' confinement (for a total of thirty years). The trial judge ordered the inducing-a-sexual-performance convictions and the producing-or-promoting convictions to run consecutively and for Scott's child-pornography convictions to run concurrent to his stacked sentences. In all, Scott was sentenced to 100 years' confinement.

On appeal, Scott raised various arguments, including that the evidence was legally insufficient to support his convictions for inducing a sexual performance by a child. *Scott v. State*, 173 S.W.3d 856, 869 (Tex. App.—Texarkana 2005). The court of appeals agreed, and it rendered acquittals on those counts. *Id.* On discretionary review, this Court left in place the court of appeals' judgments entering acquittals. *Scott v. State*, 235

S.W.3d 255, 261 (Tex. Crim. App. 2007). Scott later filed a post-conviction writ application alleging ineffective assistance of counsel. We remanded the application to the habeas court because the record was insufficiently developed. In particular, we instructed the habeas judge to respond to Scott's ineffective-assistance claim and to determine if any of his sentences had been discharged. *Ex parte Scott*, Nos. WR-83,185-07, -08, -09, -10, -11, & -12, 2015 WL 4594085 (Tex. Crim. App. July 29, 2015) (not designated for publication) (per curiam order). Although the judge noted which sentences Scott had discharged, he did not make a recommendation regarding whether Scott should get relief on the basis of ineffective assistance of counsel at the punishment phase. *Ex parte Scott*, Nos. WR-83,185-07, -08, -09, -10, -11, & -12, 2015 WL 8954906 (Tex. Crim. App. Dec. 16, 2015) (not designated for publication) (per curiam order). We remanded the application again, and the habeas court entered findings of fact and conclusions of law recommending that we deny relief on the ineffective-assistance issue. We filed and set Scott's application to determine whether his counsel was ineffective at the punishment phase. *Id.*

## II. HABEAS CORPUS

### A. Claims

Scott argues that his counsel performed deficiently in a number of respects:

- by failing to produce any mitigating evidence at the punishment stage to support a lesser sentence, namely eliciting good character evidence from family members and calling Dr. JoAnn Ondrovick to testify that Scott would be a good candidate for her rehabilitation program;

- by failing to object to Scott being sentenced to 100 years in prison as a violation of the Eighth Amendment prohibition on cruel and unusual punishment;

- by failing to object to the stacking of Scott's sentences;

- by making a deficient argument during closing;

- by not objecting to various instances of improper argument by the State during its closing; and

- by not objecting to a comment on the weight of the evidence made by the trial judge.

## B. Findings and Conclusions

The habeas court did not hold a hearing, but numerous affidavits were submitted, including two from Quannah Dixon (Scott's sister), two from Michael Scott (one of Scott's brothers), two from Orian Scott (Applicant), and two from trial counsel. The habeas court found trial counsel's affidavits credible, but not those of Dixon, Michael, or Applicant, and it entered a number of relevant findings and conclusions:

- [Defense counsel]'s failure to call witnesses to testify on behalf of [Scott] . . . was reasonable in that family witnesses refused to attend trial and the expert witness [Ondrovick] consulted by [defense counsel] was hostile to [Scott] and her testimony would have been harmful to [Scott].

- [Scott] was not prejudiced[.] [T]he very type of evidence [Scott] would solicit from [his brother and sister] -- that [he] was a successful, career educator, had serious medical problems and a family that loved him -- was presented to the jury by [defense counsel] during his closing argument without objection from the prosecutor.

- [Defense counsel]'s decision not to call Ondrovick was reasonable and appropriate in that she would have testified that [Scott] was not a suitable candidate for her treatment program and that she was angry about having to come to court during the holiday season.

- [Scott]'s sentence was not violative of the 8th Amendment prohibition against cruel and unusual punishment in that each sentence was within the statutory range of punishment for the offenses of conviction as provided by the Texas Penal Code.

- [Defense counsel]'s failure to object to the trial court's *sua sponte* stacking of sentences would have been futile because the stacking of sentences was either mandatory or within the sole discretion of the trial judge.

- [Defense counsel]'s failure to object to certain portions of the prosecution's closing argument regarding character and other potential victims in other states . . . was a reasonable trial strategy in that the objections might have drawn the jury's particular attention to that argument.

- [Scott] was not prejudiced because of the prosecutor[']s argument and failure of [defense counsel] to object due to the overwhelming evidence of [Scott]'s guilt and the quantity and nature of the evidence presented by the prosecution at the sentencing hearing. [Scott] pled "Guilty" to possessing child pornography. He maintained a large quantity of pornographic images and disturbing photographs depicting teenage boys and young men all of which was appropriately before the jury at punishment. [Scott] demonstrated a sophisticated and premeditated pattern of luring and recording teenage boys in the shower on multiple occasions. These recordings were kept as part of a larger collection of homoerotic pornography. Furthermore, the very type of character evidence [Scott] would solicit from [his sister and brother] -- that [he] was a successful, career educator, had serious medical problems and a family that loved him -- was presented to the jury by [defense counsel] during his closing argument without objection. Finally, it was uncontroverted that [Scott] had no criminal history and all trial counsel argued accordingly.

- [Defense counsel]'s failure to object to the prosecutor's characterization of [Scott] as a "pedophile" . . . was reasonable in that the [Scott] had pled "Guilty" to multiple counts of Possession of Child Pornography and the jury had found [Scott] "Guilty" of multiple counts of Inducing a Sexual Performance by a Child and Producing or Promoting a Sexual Performance by a Child.

- [Scott] was not prejudiced because the evidence showed -- and the jury found beyond a reasonable doubt -- that [Scott] was guilty of offenses involving children and [Scott] had expended considerable effort and planning to procure, produce and collect these pornographic images.

- The defense strategy was reasonable not to object to the trial judge's comment that it was "a fair assumption based upon the record" . . . because it might have drawn the jury's attention to that evidence.

- [Scott] was not prejudiced by the trial judge's single comment and [defense counsel]'s failure to object to it due to the overwhelming evidence of . . . [Scott]'s guilt, [and] the quantity and quality of the evidence presented by the prosecution at the sentencing hearing. [Scott] pled "Guilty" to possessing child pornography. He maintained a large quantity of pornographic images and disturbing photographs depicting teenage boys and young men all of which was appropriately before the jury at punishment. [Scott] demonstrated a sophisticated and premeditated pattern of luring and recording teenage boys in the shower on multiple occasions. These recordings were kept as part of a larger collection of homoerotic pornography. [defense counsel] also argued without objection that [Scott]'s family members would testify that Scott was a successful, career educator, had serious medical problems and a family that loved him (although they declined to appear at trial).

The habeas court recommends that we deny relief.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. The Law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); *see* U.S. CONST. amend. VI. To prevail on an ineffective-assistance-of-counsel claim, an applicant must prove that his trial counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011).

Under the first prong of *Strickland*, an applicant must prove deficient performance by showing that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688–89. An objective standard of reasonableness is defined by prevailing professional norms at the time of trial, and there is a presumption that counsel's performance conformed to those norms. *Id.* To overcome the presumption, an applicant must rely on evidence firmly rooted in the record,[7] unless no reasonable trial strategy could justify counsel's conduct. *Andrews v. State*, 159 S.W.3d 98, 102–03 (Tex. Crim. App. 2005). When no reasonable trial strategy could justify counsel's conduct, his conduct is deficient as a matter of law, regardless of whether the record adequately reflects counsel's motivations for employing that strategy. *Id.* We review the performance of counsel by considering the totality of the circumstances as they existed at the time of trial, without the benefit of hindsight or by relying on only isolated circumstances at trial. *See Ex parte Flores*, 387 S.W.3d 626, 633–34 (Tex. Crim. App. 2012).

---

[7]*Strickland*, 466 U.S. at 688–89; *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011).

To prove prejudice in this context, an applicant must prove that a reasonable probability exists that, but for counsel's deficient conduct, the punishment jury would have returned a more favorable verdict (i.e., a lesser punishment). *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* at 862–63.

### B. Defense's Strategy

Because Scott's ineffective-assistance claims turn on the defense's strategy, we review that strategy now. By the time of trial, Scott was about 70 years old, and because he had no criminal history, he was probation eligible on the child-pornography and the possession-or-promotion charges.[8] TEX. CODE CRIM. PROC. art. 42.12, § 4(d)(7). Trial counsel did not believe that the State could prove the inducing-a-sexual-performance-by-a-minor charges because Scott did not induce the children to masturbate in the shower, and because Scott was probation eligible on the other charges, the strategy was to fight the inducing charges but to ask the jury for mercy and to recommend probation for the other charges. To support his probation argument, counsel cited Scott's advanced age and deteriorating health,[9] claiming that any sentence of confinement was tantamount to a

---

[8]Although Scott argued for probation on the child-pornography charges and possession-or-promotion charges, he was not eligible for probation on the inducing-a-sexual-performance-by-a-child charges because no defendant can be placed on jury recommended probation if they are convicted of that crime. TEX. CODE CRIM. PROC. art. 42.12, § 4(d)(7).

[9]For example, the evidence showed that he has lymphoma (although it is currently in remission), neurosyphilis, gastrointestinal problems, and that he had a stroke while incarcerated pending trial.

death sentence, and that even though Scott admittedly was addicted to pornography and technology, his addictions could be controlled by "close supervision." Despite this, the defense acknowledged during its closing that, based on the facts of the case alone, the jury might "max out" Scott and the judge might stack some of his sentences, but counsel implored them not to do that.

The jury convicted Scott of all nine counts and sentenced him to the maximum term of confinement on each count, and the judge stacked Scott's sentences for inducing and possession-or-promotion.[10] However, on appeal, the defense's argument regarding the inducement charges bore fruit. The court of appeals reversed those convictions and entered acquittals based on insufficient evidence because the State did not prove that Scott induced the children to masturbate. *Scott*, 173 S.W.3d at 864. On discretionary review, this Court let the acquittals stand. *Scott*, 235 S.W.3d at 257.

### C. Mitigating Evidence

The first issues we address are Scott's claims that his attorney was ineffective because he did not develop available mitigating evidence. According to Scott, trial counsel should have called psychologist Dr. JoAnn Ondrovik; Scott's sister, Quannah Dixon; and one of Scott's brothers, Michael Scott, to testify. He also asserts that, had he been given the opportunity, he would have testified on his own behalf about his mitigating circumstances.

---

[10]The judge did not have the authority to stack the child-pornography convictions.

### 1. Dr. JoAnn Ondrovik

Scott contends that his counsel should have called Dr. JoAnn Ondrovik to testify because she would have stated that Scott was remorseful for his actions. According to trial counsel, however, he chose not to call Ondrovik to testify for two reasons. First, it was her opinion that, even though Scott was remorseful, she did not think that he could be successful in her program. Second, Ondrovik was hostile once she arrived at the courthouse under order because she was exchanging Christmas presents with her family when she was summoned.

While it is true that she would have testified that Scott was remorseful for his actions, her testimony would have also severely undercut the defensive strategy that Scott could be rehabilitated if he were placed on probation. Based on this, we cannot say that trial counsel employed an unreasonable strategy and was ineffective for not calling Ondrovick to testify. Because the habeas court's conclusion is supported by the record, we adopt its conclusion.

### 2. Scott's Siblings

Dixon and Michael stated in their affidavits that they would have testified about Scott's generous and giving nature,[11] his troubled childhood, his longstanding health issues, and his unblemished record as an educator for 40 years. They also said that they

---

[11]Dixon stated that Scott sold her and her husband a house he owned for $1.00 and helped pay for two of Dixon's granddaughters to go to college. He also helped Dixon pay off the mortgage on her second home and wrote to her from prison urging her to buy herself a new car and television with money from his bank account.

asked trial counsel whether they should testify at the punishment phase and that counsel told them that they would not be needed. Trial counsel disagrees, however, and says that he spoke to Dixon and Michael on multiple occasions and that he did ask them to testify, but both refused to attend the trial.[12]

The habeas judge found trial counsel's affidavits credible, and because that finding is supported by the record, we adopt it. *Ex parte Harleston*, 431 S.W.3d 67, 70–71 (Tex. Crim. App. 2014). Counsel cannot be faulted for failing to call family members to testify about Scott's good character when they refused to appear.

### 3. Scott's Proposed Testimony

Finally, Scott said that he would have testified about his longstanding health issues, including his depression and suicide attempts, and that he was remorseful for what he did to the kids. According to trial counsel, it was a strategic decision not to call Scott to testify about his health issues. At least one jailer told counsel that Scott acted different in jail than he did when he was in the courtroom, which corroborated the State's argument that Scott was malingering. The habeas court's finding that trial counsel's affidavits were credible is supported by the record, and we adopt the court's conclusion that defense counsel was not deficient for failing to call Scott to testify.

---

[12]Scott's brother and sister claim that, but for defense counsel telling them that they did not need to testify, they would have appeared in court and testified as character witnesses. However, if Scott's siblings would have attended the trial to testify on his behalf, it is not clear why they did not at least attend the trial to support him as observers. We do note, however, that trial counsel argued in closing that Scott had a good family that cared for him even though they could not be at trial.

Trial counsel did not, however, address Scott's claim that he would have testified that he was remorseful. We address it now. On the one hand, Scott's testimony would have provided the only evidence of remorse (given that his siblings refused to testify), and had the jury heard that evidence, it could have returned a lesser sentence. On the other hand, the jury may have found Scott's testimony utterly incredible given that he pled guilty to possession of child pornography but pled not guilty to the inducing and the possession-or-promotion charges. It might also have believed such testimony was disingenuous based on Scott's pattern of behavior and how long it went on. Scott sought out teenage boys as soon as he moved to Paris, and once he found a few, he immediately began grooming them. Eventually he manipulated them into showering at his house so that he could surreptitiously record them. It was later discovered that Scott had recorded almost every shower the children took over a six-month period, adjusting the camera and installing lights so that he could see the naked boys better.

When trial counsel fails to provide his reasoning for taking or not taking action, we will find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101. It is the applicant's responsibility to overcome the strong presumption that counsel made a reasonable strategic decision. *Strickland*, 466 U.S. at 689; *Andrews*, 159 S.W.3d at 101. Here, Scott has failed to rebut the presumption that his attorney employed a reasonable trial strategy because the impact of Scott's testimony would have been difficult to gauge.

We cannot say that any competent attorney would have called Scott to testify under these circumstances.[13]

## B. Failure to Object to Stacking of Sentences[14]

Next, Scott alleges that his counsel was deficient because he did not object to the

---

[13]Although not identified as a claim for relief in his writ application or memorandum of law in support of his writ application, Scott mentions in his affidavits, albeit in passing, that he would have testified at the punishment phase if he had known that he had the right to do so.

In the interest of justice we will address the issue. The United States Supreme Court has held that an accused has the federal constitutional right to testify, *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) (constitutional right to testify derives from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution), and the Texas Constitution provides that the accused "shall have the right of being heard by himself or counsel, or both . . . ." TEX. CONST. art. I § 10. This Court reviews such claims under the ordinary *Strickland* standard. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) (federal constitutional right to remain silent); *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (state constitutional right to remain silent). That is, the applicant must show that, but for his attorney's deficient advice, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Rogers*, 369 S.W.3d at 862–63.

Here, Scott has not shown that his counsel was deficient. The habeas court believed trial counsel's affidavit but not those of Scott or his siblings. Trial counsel asserted that, "[w]ithout [Scott's] assistance in showing his human side, I was rather hamstrung on presenting anything other than what the evidence showed." The habeas court was free to believe counsel's affidavit that Scott would not help to show the jury his human side, and it was free to disbelieve Scott's affidavits that he did not know that he had the right to testify. Furthermore, we have found no evidence in the record (other than Scott's affidavits) that he did not know that he could testify or that he wanted to and was prevented from doing so. It does, however, contain some evidence to the contrary. During voir dire, defense counsel told the jury that Scott would be exercising his right to remain silent (i.e., he would not testify). It follows that Scott could have testified if he did not exercise his right to remain silent. Although this is not conclusive, it is some evidence that Scott did know that he could testify.

[14]Scott also appears to directly challenge his sentences as violative of the Eighth Amendment prohibition on cruel and unusual punishment. To the extent that he directly attacks his convictions, his claim is not cognizable in post-conviction writ proceedings. *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (failure to preserve Eight Amendment claim at trial forfeits the claim for appellate review).

stacking of his sentences, which forfeited any claim on appeal that his sentences were impermissibly stacked.

After reviewing the record and the habeas court's findings of fact and conclusions of law, we adopt its findings and conclusions that trial counsel was not deficient for failing to object to the stacking of Scott's sentences because such an objection was futile.[15] To prevail on an improper-stacking claim, Scott would have to show that the trial court abused its discretion, but he cannot do so on this record because the judge's ruling was authorized by law.[16] TEX. PENAL CODE § 3.03(b)(2)(A); *Bonilla v. State*, 452 S.W.3d 811, 815 (Tex. Crim. App. 2014).

### C. Final Argument Issues

#### 1. Defense's Closing Argument

Next, Scott maintains that his trial counsel was deficient when he stated during closing that,

> I have developed a relationship with Mr. Scott, and I have developed a
> relationship with his family, and I do feel sorry for him. You can call me a

---

[15]*Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005).

[16]*Hammond v. State*, 465 S.W.2d 748, 752 (Tex. Crim. App. 1971). In *Beedy v. State*, 194 S.W.3d 595, 597 (Tex. App.—Houston [1st Dist.] 2006), the court of appeals explained that,

> An abuse of discretion generally will be found only if (1) the trial court imposes
> consecutive sentences when the law requires concurrent sentences, (2) the trial
> court imposes concurrent sentences when the law requires consecutive ones, or (3)
> the trial court otherwise fails to observe the statutory requirements pertaining to
> sentencing.

*Id.* (citation omitted).

fool for that, but there is reason for that. Mr. Scott is a human being just like anybody else. He deserves compassion just like anybody else. I saw what he's got, I saw what was put before you. A lot of [the] time I would have come in here and been a lot harder on this police officer or objected during the punishment phase of ya'll [sic] seeing that stuff. But there is no way that I can disguise his addiction. There is no way I can do that. It would be foolish for me to try to put that over on you. But what you're seeing in these clips and what you are dealing with is a man who is mesmerized by technology and by sex. And if you think that's an isolated incident, you are wrong. I'm going to get to that in just a second.

* * *

The thing that's a problem with Orian is he has never been under any type of supervision. Nobody has ever supervised him. In this state, we have probation departments that look after these people on intensive supervision and they can see them up to three times a week. They can monitor him. That is his problem. That's why we are here today, nobody has monitored his addiction. He can get treated. He can get sex offender treatment.

The right to effective assistance of counsel encompasses closing arguments of the defense. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Closing arguments involve inherently tactical decisions that must be tailored to the strategy of the defense based on events that transpired during trial. *Id.* Accordingly, deference to counsel's strategic decisions during closing arguments is particularly important because of the wealth of legitimate strategies that can be employed, and those decisions will be second-guessed only if there is no plausible basis for the attorney's actions. *Id.*

Scott argues that his counsel wrongfully implied that he had abused children before when he said, "if you think that's an isolated incident, you are wrong." We do not agree with Scott's interpretation of the record. When counsel made the complained of

comment, he was referring to his client being mesmerized by technology and sex, and the fact that many people are addicted to technology and sex. According to the defense, lots of people videotape sexual acts, including people in Paris[17] and possibly even people the jurors know. In making this argument, the defense sought to further its probation argument by putting Scott's addictions into perspective as "not that bad" compared to the rest of the community and by arguing that his addiction could be controlled if he was placed on probation. Because we do not agree with Scott's interpretation of the record, and based on our own interpretation, we conclude that trial counsel was not deficient.

### 2. State's First Closing Argument

Next, Scott argues that his counsel was ineffective because he failed to object to numerous allegedly improper parts of the State's final argument. According to him, the cited arguments were not supported by the facts, were not reasonable deductions from the evidence, and were outside the record. Appropriate jury argument generally falls within only four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011).

### a. First Claim

In the first excerpt, Scott complains that the State implied that he had abused other

---

[17]Defense counsel told a story that his doctor was discovered to be a pedophile that recorded children engaging in sexual acts. The doctor, he explained, was popular in the community and was a Tom Selleck type.

boys and that his counsel was deficient for not objecting to that argument. The State argued that,

> He has moved from state to state to state to state to state. He also worked as a teacher. You heard him tell the boys that. That ought to scare the daylights out of you. How many victims, how long of a trail of victims, has he left? He had Beta tapes of himself having sex with other men, other males. And you saw what his preference is.

Here, the State suggested that, because Scott moved around a lot and worked as a teacher, he may have victimized other male children. The record supports that Scott had moved around and had worked as a teacher for 40 years, so those arguments constitute a summation of the evidence. However, the State's implication that Scott may have left a "trail of victims" when he moved from state to state was improper.[18]

Even though the State's argument was improper, that does not inexorably lead to the conclusion that trial counsel was deficient for not objecting because counsel may have had a strategic reason for not doing so.

Trial counsel does not specifically address his reasons for failing to object to this portion of the State's argument, but the habeas court concluded that counsel may have

---

[18]Dealing with a similar issue, we characterized the question as whether,

> [T]he prosecutor's reference to the 'victims of other crimes' and 'the ones who never come and tell you about it' was an appeal to the jury to consider the impact of their verdict on sexually abused children in general, or whether, the prosecutor's argument called on the jury to consider either the existence of other adolescent victims of the appellant or to assess the appellant further punishment because other children have been victimized.

*Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990).

made a strategic decision not to object because that would have drawn the jury's attention to the argument. Because we do not know the reasons counsel did not object to the State's argument, we will examine the remainder of the record to determine whether any reasonable trial strategy could justify counsel's conduct. *Andrews*, 159 S.W.3d at 102. The record shows that trial counsel chose to respond to the State's improper argument during his closing, instead of objecting to the State's argument during its closing. Counsel told the jury that, even though the State was "portraying [Scott] as a predator and a child molester," "that is not what is front of you today." He also stated that "[t]here is no evidence here that he ever touched [the victims] and there is no evidence here that he's ever molested any children." Scott's trial counsel choice to respond to the State during his closing argument, instead of objecting during the State's initial closing argument, was a reasonable trial strategy.

### b. Second Claim

Next, Scott complains that the State improperly argued that he did not call any punishment witnesses,

> [Q]uite frankly, what's most telling of all about his character is who has come here to testify and tell you what a good person he is? If he was really a saint, where are those people? Where is a former principle [sic], where is a former neighbor, where is anybody to come and tell you something about him? They are not here. That speaks volumes as to this man's character. That speaks volumes to the trail of victims that he's left behind, and you know that to be true.

> Sometimes the State may permissibly argue that a defendant failed to call

punishment witnesses. In *McKenzie v. State*, 617 S.W.2d 211 (Tex. Crim. App. [Panel Op.] 1981), the prosecution suggested that the defense could have called a number of witnesses to testify on McKenzie's behalf, like a minister to testify that McKenzie was still welcome at church, a college classmate that would tell the jury that McKenzie is still his friend, an employer who would say that McKenzie was welcome to return to his job, or a neighbor that would testify McKenzie would be welcomed back to the neighborhood. *Id.* at 218–20. We held that those arguments were improper because there was no evidence that such witnesses existed or were available to testify. *Id.* at 221. On the other hand, in *Mosley v. State*, 686 S.W.2d 180, 183 (Tex. Crim. App. 1985), the State observed that Mosley did not call any witnesses to rebut its argument that he had bad character, "not a mother, not [a] father, not [a] brother, not [a] sister . . . ." We did not find that argument to be improper because the State never speculated that such witnesses actually existed or about what they would have said had they been called to testify.

In this case, the State first referred to Scott's general character and the fact that the defense called no character witnesses. It then suggested that Scott could have called a principal from one of the many schools he taught at (Scott taught at a number of schools over a 40-year period) or a former neighbor to talk about his reputation before he was arrested on child-abuse charges. It is clear from the context of the State's entire argument that the State was not referring to actual people, vis-à-vis, a specific principal or a specific neighbor or what such people would testify to. Rather, the inference the State urged the

jury to draw was that, even though Scott had been a long-time educator who worked at various schools and had lived in various places, he did not call a single witness at the punishment phase to testify about his good character. *Id.* We also note that, unlike in *McKenzie*, here the State did not speculate as to what specific character testimony any potential good-character witnesses would have given had one been called; whereas, in *McKenzie*, the prosecutor suggested that a minister could have testified that McKenzie was still welcome at church, a college classmate could have testified that McKenzie is still his friend, an employer could testify that McKenzie was welcome to return to his job, or a neighbor could testify that McKenzie would be welcomed back to the neighborhood. Based on all of this, we conclude that counsel was not deficient because the State's argument was permissible.

### c. Third Claim

Scott also argues that his attorney was ineffective in failing to object to the following portion of the State's closing argument,

> Ask yourself this one question, why did he come to your county, why did he come to your community? The obvious answer is victims of opportunity. There was a time here where you could open your door Saturday morning and have your boy and girl go out and have fun, be back for dinner . . . . Thanks to Mr. Scott and others like him, we can't do that . . . you always have to be on the lookout for the Mr. Scotts of the world . . . . [W]e live in fear for what he will do to our kids. Or do you want to take a stand and send not only him a message-make no mistake about it, he certainly appears to be an elderly gentlemen. He may not have long to live on this earth, but whether it's two minutes or twenty years, he has been here too long . . . if someone had done something 30 or 40 years ago, we wouldn't be here. But they didn't.

Considered in its entirety, we conclude that this was a permissible plea for law enforcement. It was not improper for the State to ask the jury to send a message to Scott and the community that his type of behavior, and that of other child predators, is unconscionable and will not be tolerated. Also, even if the State's argument was improper, we cannot say that counsel's choice not to object was part of an unreasonable trial strategy. The State had made a similar argument earlier in its closing, and defense counsel responded to both arguments in his closing. Trial counsel's choice to respond to the State during his closing argument, instead of objecting during the State's initial closing argument, was a reasonable trial strategy.

### 3. State's Final Closing Argument

Scott also directs us to various excerpts from the State's final closing argument that he argues his counsel should have objected to. We address each contention in turn.

### a. First Claim

Scott first complains about the following argument made by the State during final summation,

> Let me make this clear. If this man gets probation today, he gets up and he walks out that door and he goes home and he lives in a house and he does whatever he wants to do, other than the 30 minutes or so that he has to report to a probation officer each week. Do you want that man back in our community offending teenage boys again? Or do you want to send him to Oklahoma to see his family to offend in Oklahoma or in Indiana? He came here because the other states didn't do anything, possibly. And look what he did here. Probation is not the appropriate punishment in this case.

The State's argument that Scott was able to abuse the victims because "the other

states didn't do anything, possibly," was allegedly improper because it went outside of the record. The question is whether trial counsel was deficient when he failed to object to that allegedly improper argument. We conclude that he was not. The State made a similar argument during its initial closing, which the defense responded to. Objecting to the State's argument again would have only drawn the jury's attention to that argument. It also could have undercut the defense's strategy of Scott accepting responsibility for his behavior and pleading for mercy from the jury.

### b. Second Claim

Next, Scott contends that the State made an improper argument when it asserted that,

> He's got this sexual addiction but we haven't heard proof of that. The man is a pedophile. He preys on young kids and takes advantage of them. He wants to blame it on the [I]nternet. I don't believe the [I]nternet was around when Beta tapes[19] were invented, so we are not going to blame it on the [I]nternet.

Scott complains that the State's argument referring to him as a pedophile was outside of the record and not a fair deduction from the evidence. The habeas court disagreed, concluding that counsel's failure to object was reasonable because Scott could have properly been characterized as a pedophile. We agree with the habeas court and adopt its conclusion. It is a fair deduction from the evidence that Scott is a pedophile. He pled guilty to multiple counts of possession of child pornography, which was properly

---

[19]Betamax tapes are a type of video cassette that were developed by Sony and were released in 1975.

before the jury, and the jury convicted him of three counts of inducing a sexual performance by a child and promoting a sexual performance by a child.[20] The State also presented evidence that Scott engaged in a pattern of grooming his victims and surreptitiously recording them masturbating and that he was in possession of a substantial amount of child pornography. Based on this, the State asked the jury to draw a reasonable deduction from the evidence that Scott is sexually attracted to children.

### c. Third Claim

Next, Scott argues that the following closing argument made by the State was improper,

> How long has he been taking photographs of young kids? How long has he moved from state to state to state to lure in and throw out that net for 14 and 15 year old boys? It's not an [I]nternet addiction, ladies and gentlemen.

The evidence shows that Scott was a teacher who had lived in various places. It also showed that he had photographs in a shoe box of young children and that he lured in the young victims in this case by grooming them. From the context of the State's argument, it appears that it was asking the jury to infer that Scott may have tried to groom other children. Even if it did, that argument was not a reasonable deduction from the evidence, and it went outside of the record because there is no evidence to support that proposition. However, we do not believe that counsel was deficient. As we have noted,

---

[20]Scott argues that the pedophile comment was improper because pedophilia is a psychiatric disorder and that the evidence does not support such a diagnosis. However, the State was not portraying Scott as a person diagnosed with pedophilia; rather, it was arguing that Scott was sexually attracted to children based on the evidence.

the defense had already responded to a similar argument and repeatedly objecting to the

State's argument would have served only to draw the jury's attention to argument.

### d. Fourth, Fifth, and Sixth Claims

Scott's next claims stem from the following excerpt,

[PROSECUTOR]: What was Mr. Scott's intent? Do you think it was just to get these boys in there and photograph them and do nothing else? That's so far from the truth. As soon as he moved here, he threw out the bait, threw out the net; by the way, the teenage boys is what I need. And he got them.

[Defense counsel] told you in opening statement that this was a sick old man, been going on five years. He didn't mean that he was physically sick. He meant that he was a pervert and has been a pervert all of his life. That's what he is. That's what he is. I hate to be that -- use those kinds of descriptions, but that's the fact of the matter.

Now, think about what would have happened if this had continued on. There is no question that these boys would have been sexually assaulted.

[DEFENSE]: Your Honor, I'm going to object. That misstates the evidence and it's beyond the scope of the evidence.

[COURT]: I think it's a fair assumption based on the record. The objection is overruled.

[PROSECUTOR]: Look at the photographs, [not] just the five that were introduced. Look what he has. Look at the thousands and consider the thousands and thousands of images. Look at the videotapes that he's kept for himself having sex with a male for 25, 30 years. What do you think is going to happen?

Look at the fact that he was in San Antonio not too long ago, hires a male prostitute to come see him, videotapes that action and then discusses [I]nternet pornography sites, child pornography sit[es] with this prostitute. What does that tell you? Now, I think we need to be thankful that none of that got that far, but what he's facing here now is just as serious.

How do we know that the tapes that he made aren't out there? He had the capabilities in his bedroom to take one and record it. How do we know that he didn't sell that to this sea of people that exists? Think about that.

### i. Fourth Claim

First, Scott argues that the prosecutor's argument speculating as to his intent and whether his deviant behavior would continue to escalate was outside of the record. However, even if that argument was outside of the record, defense counsel objected to it. And, although counsel could have also asked for a curative instruction or requested a mistrial, such actions would have been futile given that the judge overruled his objection.

### ii. Fifth Claim

Next, Scott claims that the State crossed the line when it told the jury to consider, not only the five photographs admitted into evidence, but also the "thousands and thousands of images" police seized. We disagree. The argument was a proper summation of the evidence. Five images were admitted into evidence, and it was agreed that those five images were just a representative sample of all of the images seized from Scott.[21] Even though only a few pictures were admitted into evidence, the jury was allowed to consider all of the admitted evidence, including the testimony of Rhodes, who said that police seized several CDs, DVDs, and 400 floppy disks containing pornography. He also

---

[21]The State said as much in its closing arguments,

> Good morning. First of all, I want to talk about the evidence that we have introduced. We brought to you what we felt was sufficient for you to have a good idea what it is. I apologize if you felt like we should have brought you every DVD and showed you the thousands of images, but I didn't want to do that. After watching those movies yesterday, I didn't think you did either. I think you have an idea after listening to testimony as to what was in that material, and after looking at those five photographs as being representative as to what the defendant had on his computer.

testified that police found thousands of pornographic images on Scott's computer and a shoe box filled with pictures of boys swimming in a pool at what looked like a party. Defense counsel was not deficient in failing to object to proper argument by the State.

### iii. Sixth Claim

Finally, Scott argues that the State's suggestion that he may have released or sold the pictures or videos in his possession over the Internet was improper.[22] We agree that the argument was outside of the record. Although there was evidence that Scott downloaded many of the images that were seized and that he frequented child pornography websites, there was no evidence that he bought or sold child pornography. The question then is whether defense counsel's failure to object was a reasonable choice under the totality of the circumstances as they existed at trial.

Because the record is devoid of any reasons for counsel's failure to object, we review it to determine whether counsel's conduct was so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 102–03. Here, it is conceivable that counsel made a reasonable strategic decision not to object to the State's argument. The strategy was to implore the jury to be merciful and place Scott on probation. Counsel could have reasonably believed that such objections would undercut the defense's plea for leniency. Counsel's failure to object was not so outrageous that no

---

[22]The habeas court found that the State never suggested that Scott sold the videotapes of the boys showering over the Internet, but that finding is not supported by the record, and we do not adopt it.

competent attorney would have engaged in it.[23]

### D. Improper Comment

In Scott's final claim, he argues that his counsel was deficient when he failed to object to the trial judge's comment that it was "a fair assumption based on the record" that Scott would have eventually sexually assaulted the boys. He also asserts that counsel was deficient because he did not request a mistrial. The habeas court concluded that defense counsel may have made a strategic choice not to object because doing so would only draw the jury's attention to the judge's comment.

"The trial judge shall maintain an attitude of impartiality throughout the trial." *Lagrone v. State*, 209 S.W. 411, 415 (1919). The Texas Code of Criminal Procedure states that the judge shall not, "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. art. 38.05. When a trial judge does make a comment on the weight of the evidence, it constitutes reversible error only if the comment was "reasonably calculated to prejudice the defendant's rights." *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex. Crim. App. 1983). Scott argues that the judge's statement was a comment on the weight of the evidence because it showed the judge's belief that, based on the evidence,

---

[23]In his supplemental affidavit, defense counsel said that,

> During the trial, I regularly watched the jurors to gauge their emotions and reactions. It was obvious to me that hearing the teenage boys testify, watching the videos admitted into evidence of them masturbating in a curtainless shower and watching Mr. Scott simulate masturbation was repulsive to each and every juror.

Scott would have eventually sexually assaulted the boys. He also asserts that the comment was reasonably calculated to injure his rights because the judge's comment bolstered the State's argument that Scott was not deserving of a lesser sentence. According to him, this is especially evident in light of the fact that the jury assessed the maximum punishment and the judge stacked his sentences.

It is a close call whether the judge made an improper comment on the weight of the evidence because the meaning of the comment is not clear. On the one hand, the judge's response could have meant that the State's argument was proper because it was a reasonable deduction from the evidence, which is a proper area of closing argument. On the other hand, the judge's comment could be read to mean that he was approving of the State's view of the evidence, which would be an improper comment.

In his affidavits, trial counsel does not specifically address his reasons for not objecting, but even if we assume that the judge's comment was improper, trial counsel was not deficient. Directly preceding the judge's comment, the defense had just objected to the State's argument. Counsel may have believed that it was unlikely that the judge, who had just overruled counsel's objection, would have sustained a defense objection that he commented on the weight of the evidence. Counsel also may have believed that it was best not to draw the jury's attention to the judge's comment or to the State's improper argument. At any rate, we cannot say that counsel's conduct was so outrageous that no competent attorney would have engaged in it.

## E. Prejudice

The habeas court concluded that Scott was not prejudiced because the evidence of guilt was overwhelming. We need not address the issue, however, having already concluded that trial counsel performed effectively.

## IV. CONCLUSION

Because Scott has not proven that he received ineffective assistance of counsel at the punishment phase of his trial, we deny relief.

Delivered: October 18, 2017

Publish