

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00329-CR

John Anthony **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CR2058
Honorable Jennifer Peña, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 9, 2023

AFFIRMED

Appellant John Anthony Garcia challenges his judgment of conviction for aggravated robbery. He argues his retained counsel acted in such a way that violated his Sixth Amendment right to effective assistance of counsel. We affirm.

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

## BACKGROUND

Garcia was charged with aggravated robbery, enhanced for repeat offender status, after he allegedly robbed a convenience store at gun point in November 2020. *See* TEX. PENAL CODE § 29.03(a)(2). A jury found Garcia guilty, and the trial court sentenced him to thirty years with the Texas Department of Criminal Justice Institutional Division. Garcia now appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Garcia argues his trial counsel's many acts or omissions, jointly or severally, fell below an objective standard of reasonableness. He further argues had these deficiencies not occurred, more than a reasonable probability exists he would have either been acquitted or received a lesser punishment than the thirty years assessed by the trial court.

### A. Standard of Review

We review ineffective assistance of counsel claims under the well-established standard in *Strickland v. Washington*. 466 U.S. 668 (1984). "Evaluating claims of ineffective assistance of counsel under the Sixth Amendment involves a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687). "To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Id.* "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). "Courts should consider the reasonableness of counsel's actions at the time, rather than viewing such actions through the benefit of hindsight."

*Id.* at 782. "The Court should make this determination in light of all the circumstances in order to determine if the actions fall outside the wide range of professionally competent assistance." *Id.*

"Claims of ineffective assistance must be firmly rooted in the record." *Id.* "Under most circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the strong presumption that counsel's conduct was reasonable and professional." *Id.* (quoting *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)). "Given this fact, trial counsel should ordinarily be afforded an opportunity to explain his conduct before being denounced as ineffective." *Id.* "In the absence of such an opportunity, when faced with an undeveloped record on direct appeal, [c]ourts commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (alteration in original) (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)) (internal quotation marks omitted). "Counsel's actions are considered deficient only if the court finds, as a matter of law, that 'no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning.'" *Id.* (quoting *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011)).

To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) ("This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (quoting *Strickland*, 466 U.S. at 687)). Failure to show either deficient performance or prejudice defeats an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

### B. Failure to Move for Continuance

Garcia first argues his attorney's performance was deficient because he failed to preserve error by not filing a written motion for continuance. Garcia further contends trial counsel's continuance error was prejudicial.

Texas Code of Criminal Procedure article 29.03 provides "[a] criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown" in the motion. TEX. CODE CRIM. PROC. art. 29.03. "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. The Court of Criminal Appeals "construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "A motion for continuance not in writing and not sworn preserves nothing for review." *Richardson v. State*, 606 S.W.3d 375, 384 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (quoting *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999)).

"To establish ineffective assistance of counsel, the appellant must demonstrate that the trial court would have erred in denying a properly filed written motion." *Id.* "Appellate courts review the trial court's decision to deny a motion for continuance for abuse of discretion." *Id.* "An appellate court will conclude the trial court's denial of a motion for continuance was an abuse of discretion only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010)) (internal quotation marks omitted). "To establish an abuse of discretion, a defendant must show that she was actually prejudiced by the denial of her motion." *Id.* Ordinarily, a defendant can "make such a showing only at a hearing on a motion for

new trial because only then will she be able to produce evidence regarding what additional information, evidence, or witnesses the defense would have had available if the trial court had granted the motion for delay." *Id.* at 825–26.

Here, Garcia's counsel did not file a sworn written motion for continuance, failing to preserve any complaint regarding a continuance motion for appeal. *See Anderson*, 301 S.W.3d at 279; *Richardson*, 606 S.W.3d at 384. But even if Garcia had filed a written motion, we cannot conclude the trial court would have abused its discretion by denying it. Trial proceedings commenced on Wednesday, March 30, 2022. After the State announced it was ready, counsel for Garcia stated:

> We are not ready, Your Honor. At this point, the defense is going to request a continuance based on the following: Last week I asked the State which of the five cases they were wanting to go to trial on. They gave me Cause No. 2021-CR-2233. Yesterday the State informed me that they had chosen a different case to go to trial on. That's 2021-CR-2058. I think the State will agree with me that I was given one information last week and a – different information yesterday. The case that I was told originally was going to be tried is the one that I have prepared and am ready for trial on. I will say this: I have been retained on all five cases. So, I'm aware of the other cases being here. However, I was ready on the one case they told me and not quite as ready on the new case.

Counsel for the State explained she informed Garcia's counsel five days earlier—on Friday, March 25, 2022—it was going to trial on the case involving the November 11, 2020 aggravated robbery. However, she decided to go to trial on the November 4, 2020 aggravated robbery case instead "[a]fter meeting with witnesses, serving witnesses, reviewing the evidence, [and] meeting with officers." Counsel for the State further indicated she informed Garcia's counsel in writing on Tuesday, March 29, 2022—four days later and on the day before trial. Counsel for the State added the November 4, 2020 incident was just "one week before the [November 11, 2020 aggravated robbery]." The trial court then denied the motion, explaining "all cases were set for trial," and Garcia had been in jail for more than 500 days on each case.

Nothing in the record shows how Garcia was harmed by the lack of a few more days to prepare for trial. Garcia's counsel did not identify any witnesses as unavailable based on the change, acknowledged he had been retained on the aggravated robberies, and simply claimed he was "not quite as ready." *See Nwosoucha*, 325 S.W.3d at 825. Furthermore, the trial court explained the cases had been set for trial for some time.

Accordingly, we cannot conclude trial counsel rendered ineffective assistance by failing to file a written motion for continuance. *See Strickland*, 466 U.S. at 687; *Richardson*, 606 S.W.3d at 384; *Nwosoucha*, 325 S.W.3d at 825.[2]

### C. Opening the Door to Extraneous Offenses

Garcia also contends his trial counsel's performance was deficient when he "opened the door" to extraneous offense evidence to prove his identity, and but for that evidence, a reasonable probability exists he would have been acquitted or sentenced to a lesser punishment. Specifically, Garcia argues his trial counsel opened the door when he stated during jury selection:

> What we're here to tell you is that it wasn't this defendant who did it. Okay? So, you can put aside all the other stuff. Was it in Bexar County? What was the date? What was the time of day? Yada. Yada. Yada. The bottom line is: The State has to prove he did it. He's saying he didn't. That's what we're here about. Okay? That's what justice is about. It's—you have to make a decision. Did he do it, or did he not do it?

"We review a trial court's decision to admit or exclude extraneous offense evidence under Rules 404(b) and 403 for an abuse of discretion." *Perkins v. State*, 664 S.W.3d 209, 216 (Tex.

---

[2] Garcia also argues his trial counsel's decision not to file a motion for new trial was deficient because it insulated his failure to file a written continuance motion from a finding of prejudice in this court. However, Garcia's contention relies on a misunderstanding of the record. The day after sentencing, Garcia's trial counsel was replaced by the Bexar County Public Defender's Office—which represents him before this court. Because Garcia's trial counsel was replaced well before the deadline to file a motion for new trial, *see* TEX. R. APP. P. 21.4, we cannot conclude trial counsel rendered ineffective assistance by failing to file a motion for new trial. *See Strickland*, 466 U.S. at 687; *Cooks v. State*, 240 S.W.3d 906, 911-12 (Tex. Crim. App. 2007) (providing where appellant is represented by counsel, there is rebuttable presumption counsel continued to effectively represent defendant between end of trial and new trial motion deadline and, even if presumption rebutted, error subject to harm analysis and harm only found where appellant presents facially plausible claim).

Crim. App. 2022). An extraneous offense "may be admissible" under Texas Rules of Evidence Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). However, even if a trial court determines evidence is admissible pursuant to rule 404(b), "Rule 403 may still preclude its admission if the trial court determines that the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay or needlessly presenting cumulative evidence." *Perkins*, 664 S.W.3d at 216.

Turning to Garcia's argument trial counsel opened the door, the State contended during jury selection Garcia's trial counsel made identity an issue and moved to admit the extraneous offenses under rule 404(b) to prove Garcia was the November 4, 2020 perpetrator. The State proceeded to identify the similarities between the November 4, 2020 offense and the other aggravated robberies occurring in October and November 2020. The trial court denied the State's motion, explaining it was premature. Because the trial court denied the motion, rejecting the State's contention Garcia opened the door to the extraneous offenses during jury selection, Garcia has not demonstrated how counsel's performance fell below an objective standard of reasonableness or a reasonable probability exists, but for trial counsel's alleged error, the proceeding's result would have been different.[3] *See Strickland*, 466 U.S. at 687.

**D. Failure to Object**

Garcia further argues his trial counsel's performance was deficient because he failed to object to testimony about Garcia's illegal November 14, 2020 stop on no reasonable suspicion grounds, and to certain facts not in evidence used by the State during its closing argument to

---

[3] After the trial commenced and after testimony from the witness in the November 4, 2020 aggravated robbery, the State moved a second time to admit the extraneous offenses for identity purposes. It argued Garcia's trial counsel made identity an issue on the witness's cross-examination. Garcia does not contend trial counsel opened the door during the November 4, 2020 witness's questioning, and we do not consider it here. *See* TEX. R. APP. P. 47.1.

explain why law enforcement never investigated appellant's son as a viable alternate suspect. Garcia further contends no reasonable trial strategy could explain this professional neglect.

Turning to the failure to object, the record is practically silent regarding counsel's reasons for not objecting, and this case therefore "falls into the category of ineffective-assistance claims raised on direct appeal for which the record is undeveloped because it does not adequately reflect counsel's reasoning." *Hart*, 667 S.W.3d at 783. Where counsel has not had an "opportunity to explain his actions," we may assume a strategic motive "if any can be imagined," and will "find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or . . . if no reasonable trial strategy could justify counsel's actions." *Id.*

Here, we can imagine trial counsel's decision not to object to the admission of the November 14, 2020 traffic stop evidence was a reasonable trial strategy because it permitted counsel to show the State's evidence identifying Garcia as the November 4, 2020 perpetrator was incomplete and unreliable. *See id.* at 782. The bulk of the State's evidence at trial focused on the identity of the perpetrator and specifically the video footage from the different convenience stores. It demonstrated the perpetrator carried a long-barreled black pistol and wore a medical face mask, hoodie, and jeans. Virtually none of the evidence at the traffic stop was consistent with the video footage or eyewitness statements of the robberies. For example, Garcia's trial counsel elicited testimony regarding the traffic stop from Officer Medina—an officer involved in the stop— establishing Garcia did not have a firearm, was not wearing a face mask, and Medina "didn't know who [Garcia] was" until after he reviewed the information on his driver's license. Detective Ludwig further testified Garcia was wearing clothing with the Popeye's logo, and he informed the officers he was on his way to work. Although the detective testified Garcia "seemed to fit the physical description of the suspect" during the stop, he conceded "there's a lot of people at that approximate height and weight in San Antonio. So I couldn't say for certain if that's him." The

detective also used the stop to conduct a field identification of Garcia with the November 14, 2020 robbery witness. He testified that after he commenced the field identification, the witness was unable to see Garcia from fifty to sixty yards away because her vison was "not real good." He further testified he ultimately drove the witness to a location within thirty-five to fifty yards and provided her binoculars to facilitate the field identification. The witness only then positively identified Garcia—who wore a medical mask put on him by SAPD—by "his eyes."

Because undermining the State's identification evidence would constitute a reasonable trial strategy that is not so outrageous and unjustified, we cannot conclude Garcia has overcome the strong presumption counsel made a reasonable, strategic decision to undermine the State's identification evidence, and we cannot conclude trial counsel's actions were deficient. *See id.* at 784 (concluding, based on undeveloped direct-appeal record, counsel not deficient when counsel elected to argue at punishment phase "[a]ppellant had acted rationally and reasonably in seeking to protect his daughter, rather than pursuing a sudden-passion argument" because "such a strategy is not so outrageous that no reasonable attorney would have engaged in it"); *see, e.g.*, *Ex parte Scott*, 541 S.W.3d 104, 116 (Tex. Crim. App. 2017) (holding court could not find trial counsel employed unreasonable strategy and was ineffective for not calling witness because testimony would have also severely undercut defensive strategy); *see also Prine v. State*, 537 S.W.3d 113, 118 (Tex. Crim. App. 2017) (reasoning even if probation officer opinion inadmissible, decision to call him as witness was strategic choice and evaluating those risks and benefits is type of strategy ordinarily requires evaluating attorney's explanation before concluding counsel is ineffective).

Turning to Garcia's argument counsel's performance was deficient for failing to object during the State's closing argument, Garcia argues the State referenced his son's age during closing argument to explain why law enforcement decided not to investigate his son even though evidence

showed his son owned the Peanuts hoodie seen in the robberies. Garcia contends this was improper argument by the State because his son's age was not in evidence.

Garcia misstates the record. During its closing argument, the State contended:

> November 14th, 2020, the same exact Circle K. You heard from Sabrina Delgado the same hoodie, white, off white with Peanuts, jeans, mask on, Hispanic male, 30 to 40, wide, big eyes and a blue mask on, cigarettes again. This time the gun's in the waistband. Circle K, again Bexar County.
>
> The difference in these last ones, right, is that Perla Rodriguez, although she didn't want to do it, you-all heard her say, Oh, my God; Oh, my God, when she was asked to look at the Defendant and say is that the person. She didn't want to do it, but she was here. And she said, Yes. That is the person, and I recognize him.
>
> Sabrina Delgado, within two hours of having been robbed, goes and identifies him that same day with binoculars on, right? When you put all of these together, what it means is that you know it's John Garcia on November 4th because of his signature robbery style and the distinctive car, the distinctive gun, which he is in possession of, right, and he's found inside of that distinctive car. His physical attributes actually match, right?
>
> They didn't go and talk to a 15 or 16-year-old boy because every single one of these witnesses told them he was a Hispanic male in his thirties. Doesn't make sense to go and interview somebody.

The reference is clearly made to draw a contrast with the evidence in the record supporting the perpetrator was in his thirties. And although the closing statement referred to "a 15 or 16-year-old boy," there is no reference to Garcia's son. Even if there were a reference to the age of Garcia's son, the record shows DeLaFuente—who Garcia lived with at the time of his arrest—testified he believed Garcia's son was approximately seventeen or eighteen years old at the time of trial. Moreover, trial counsel's decision not to object to the closing argument was a reasonable trial strategy because it permitted counsel to further contend during his closing argument the State's investigation was insufficient: "I kind of wish they had gone to see Mr. Garcia's son to find out – he's a teenage boy that might not even fit into the hoodie." *See Hart*, 667 S.W.3d at 783.

Because the age of Garcia's son was in evidence and because arguing the investigation conducted surrounding the robberies was insufficient, we cannot conclude Garcia has overcome

the strong presumption counsel made a reasonable, strategic decision or counsel's actions were deficient. *See Hart*, 667 S.W.3d at 784; *Scott*, 541 S.W.3d at 116; *Prine*, 537 S.W.3d at 118. Accordingly, we cannot conclude counsel rendered ineffective assistance. *See Thompson*, 9 S.W.3d at 813.[4]

## E. Eliciting Testimony About Warrants

Garcia argues his trial counsel's performance was deficient when he elicited testimony from Officer Medina about Garcia's active warrants at the time of his November 14, 2020 arrest. Specifically, he argues the testimony about the warrants rendered the testimony regarding the traffic stop harmless and was otherwise improper because it referred to prior bad acts and was inadmissible under Texas Rules of Evidence 403 and 404(b). Because we have already concluded counsel's failure to object to the traffic stop was not deficient, we only consider whether counsel's performance was deficient for eliciting testimony on the warrants. *See* TEX. R. APP. P. 47.1. Here, Garcia fails to demonstrate by a preponderance of the evidence how counsel's actions fell below an objective standard of reasonableness. *See Hart*, 667 S.W.3d at 781. Nor does he demonstrate prejudice by showing how the proceeding's result would have been different. *See Strickland*, 466 U.S. at 694. We therefore cannot conclude counsel rendered ineffective assistance by eliciting testimony on the warrants.[5]

---

[4] Garcia further contends trial counsel's performance was deficient for failing to object to the State's use of un-Mirandized statements made by Garcia to a detective in the field. However, Garcia does not identify any of his statements used against him, TEX. R. APP. P. 33.1, or how counsel's failure to object to the use of the statements was prejudicial to his defense. *See Strickland*, 466 U.S. at 694. We therefore cannot conclude counsel rendered ineffective assistance by failing to object to the State's use of un-Mirandized statements made by Garcia to a detective in the field.

[5] Finally, Garcia argues the totality of representation deprived him of effective assistance of counsel. Because we find the ineffective assistance claims raised here were not errors or Garcia failed to otherwise carry his burden of showing how they were, we cannot conclude any cumulative effect resulted in the deprivation of effective assistance of counsel. *See Strickland*, 466 U.S. at 687; *Reyes v. State*, 557 S.W.3d 624, 642 (Tex. App.—El Paso 2017, pet. ref'd).

## CONCLUSION

The judgment is affirmed.

Luz Elena D. Chapa, Justice

Do Not Publish