# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00758-CR

**Ex parte Jordan Graham Bice**

### FROM COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 18-0202-C, THE HONORABLE DAVID GLICKLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jordan Graham Bice was convicted of the misdemeanor offense of theft and was sentenced to two days' "confinement in the Hays County Jail" with credit for time served. *See* Tex. Penal Code § 31.03(a), (b), (e). Approximately two years later, Bice filed an application for writ of habeas corpus challenging the propriety of his conviction. *See* Tex. Code Crim. Proc. art. 11.09. Following a hearing, the trial court denied the writ application. Bice appeals the trial court's order. We will affirm the trial court's order denying the writ application.

## BACKGROUND

As mentioned above, Bice was convicted of theft and later filed an application for writ of habeas corpus challenging his conviction. In his writ application, Bice stated that he and his girlfriend at the time were alleged to have "removed price tags on several pieces of electronic accessories" at a store and then "replaced them with the price tags of less expensive items." During the underlying trial proceedings, Kyle Maysel was appointed as Bice's attorney, and

various prosecutors, including Ariane Flores and Benjamin Gillis, were involved in the events leading up to the trial, including plea negotiations.

After Bice was convicted, Maysel died. Months later, Bice filed an application for writ of habeas corpus contending that Maysel provided ineffective assistance of counsel during the underlying proceedings. In particular, Bice asserted in his writ application that the State "decided to recommend Pretrial Intervention ('PTI')," which "would have allowed [him] to have the charge dismissed . . . upon successful completion of the supervision period, and would have made him eligible for an expunction" after he paid "a $500 fee," completed "a theft class," and performed "a small amount of community service." However, Bice asserted that Maysel incorrectly conveyed that the $500 "fee was discretionary on the part of the" State when the fee was actually mandatory and that the State's decision to impose the fee meant that the State was acting "out of the ordinary." Further, Bice argued that he was never advised "that he would be allowed to make payments on the $500 fee." Bice also alleged that Maysel incorrectly assessed the strength of the State's case and stated that they "would likely prevail at trial" despite knowing that there were witnesses to and surveillance footage of the alleged crime and that he "was caught with . . . items with altered tags in his possession." Moreover, Bice argued that Maysel's assurances about the case and warnings that the State was acting "out of the ordinary" persuaded him "to accept counsel's advice that he reject the plea offer and proceed to trial." Additionally, Bice asserted that after the State initially offered to recommend pretrial intervention, the State "offered to recommend six months deferred adjudication on the theft charge, with reduced fine and court costs," but that Maysel "*never conveyed*" the offer.

In his writ application, Bice urged that if the first offer had been properly explained and if the second offer had been conveyed to him, he would have accepted either offer

2

because they "would have resulted in the ultimate dismissal of the theft charge." Further, Bice asserted that his conviction resulted in being denied "employment opportunities" because "he has been unable to find suitable employment since earning his degree" and "has been summarily denied each and every job for which he has applied, upon return of the background check." In light of the preceding, Bice requested that the trial court vacate his prior conviction and "[o]rder the State to reoffer its previous recommendations of Pretrial Intervention or six months unsupervised deferred adjudication."

As support for his claims, Bice attached to his writ application an affidavit from Anthony Fusco, who represented Bice after he was convicted. In his affidavit, Fusco summarized conversations that he had with Bice and with Flores, who prosecuted the case. Specifically, Fusco stated that Flores informed him about the second plea offer of six months deferred adjudication that she conveyed to Maysel. Moreover, Fusco related that when he mentioned the second offer to Bice, Bice stated that Maysel never told him about the offer.

In addition, Bice attached his own affidavit in which he recounted various conversations that he allegedly had with Maysel and discussed his understanding of the initial plea offer. Regarding the plea offer, Bice stated that he would not have risked going to trial if he had "been advised that the $500 pretrial intervention fee was in fact mandatory" or if he had been provided with "a realistic evaluation" of his case. Additionally, Bice asserted that the State made a second offer recommending "six months unsupervised deferred adjudication" but that Maysel never told him about the offer. Bice contended that he would have accepted the second offer if it had been communicated to him.

In its response, the State urged that Bice's allegation that his attorney "failed to inform [him] of how PTI 'functions,' . . . lacks corroboration" and was inconsistent with what

3

occurred in the underlying proceedings. In particular, the State argued that Maysel's interaction with the various prosecuting attorneys demonstrated that he communicated to Bice how the pretrial intervention "program worked and what the State was requiring." The State also urged that Maysel "understood the evidence" against Bice and "tried to strategically differentiate [Bice] from his more culpable co-defendant" by arguing to the State that Bice did not "do the actual stealing, his girlfriend did." Regarding the allegation that Maysel failed to communicate an additional offer, the State argued that there was no evidence to support that claim. On the contrary, the State insisted that after learning of the new offer, Maysel informed the State that he would communicate the offer to his client.

As support for its contentions, the State attached affidavits from various individuals involved in the prosecution of the underlying case, including Flores and Gillis. In her affidavit, Flores explained that during a hearing, Maysel "attempted to plea to the Pre-Trial Intervention + 24 community service restitution hours + theft class" and that "the State required proof of school or work, two letters of recommendation, and a $100 money order from" Bice going "towards the $500 balance for the PTI program" before the State would agree to recommend placing Bice in pretrial intervention. Further, Flores related that Maysel showed "Gillis proof of school" enrollment, "two letters of recommendation, and a completed theft class" and that Gillis "agreed to a re-set so that applicant could get his $100 money order." Next, Flores stated that Maysel later expressed "frustration about the fees" and asked her if it was possible for her to make a different plea offer because Bice "could not afford PTI fees," that she "conveyed a new offer of six months unsupervised deferred adjudication" plus a $300 fine, and that Maysel stated that "he would convey the offer but knew his client would reject it." Furthermore, Flores stated that Maysel told her that Bice was "not culpable" because he did not

4

"do the actual stealing, his girlfriend did," and accordingly, that the State would have a difficult time proving its case.

In his affidavit, Gillis explained that Maysel established Bice's compliance with most of the requirements for the intervention program listed above. In addition, Gillis stated that the fact that Maysel provided proof of Bice's enrollment in school from "a phone purported to belong to Bice" led Gillis "to believe that Mr. Maysel conveyed the offer of PTI to Bice." Gillis also related that he told Maysel "that Bice would need to pay $100 at the time of his plea to begin the PTI," that Maysel explained that he had not been told about the fee prior to that conversation, and that Maysel stated that he needed to talk to his client about that requirement.

During the habeas hearing, Bice was the only witness to testify. In his testimony, Bice stated that Maysel persuaded him during their first meeting that being placed in the pretrial-intervention program was the best option because a trial was too risky. In addition, Bice related that Maysel seemed to have a good understanding of the case, that he felt comfortable asking Maysel questions about his case, that Maysel responded to his questions, and that Maysel explained that the pretrial-intervention program would entail "a year of probation, community service, a theft class, and a $500 fee." However, Bice testified that Maysel never explained that the $500 fee could be paid off in installments or that he was only required to pay $100 of the fee before entering the pretrial-intervention program. Bice also stated that although he told Maysel that it would be difficult for him to pay the $500 fee at the time, he could have paid $100 to enter the intervention program.

In his testimony, Bice also explained that Maysel told him that they could go to trial "if [he] want[ed] to." Bice also recalled that Maysel did not guarantee any outcome but was hopeful that they could win the case because "[h]e thought there was a lack of evidence."

5

Moreover, Bice testified that Maysel said that there were no witnesses or surveillance footage of the criminal episode and that, accordingly, he was surprised during the trial when a loss-prevention officer from the store testified at trial and explained that she watched footage of the crime. Further, Bice testified that Maysel never informed him that the State made a second plea offer and that he would have accepted the second offer.

After the hearing, the trial court denied Bice's writ application. The trial court did not issue any written findings of fact or conclusions of law regarding its ruling.

**STANDARD OF REVIEW AND GOVERNING LAW**

"Texas Code of Criminal Procedure article 11.09 provides that a person who is 'confined on a charge of misdemeanor' may apply for habeas relief 'to the county judge of the county in which the misdemeanor is charged to have been committed.'" *Ex parte Alvarez*, 570 S.W.3d 442, 444 (Tex. App.—Austin 2019, pet. ref'd) (quoting Tex. Code Crim. Proc. art. 11.09). "The Court of Criminal Appeals has held that 'appeals from denial of relief sought in a misdemeanor post conviction writ of habeas corpus should be directed to the courts of appeals.'" *Id.* (quoting *Ex parte Jordan*, 659 S.W.2d 827, 828 (Tex. Crim. App. 1983)). Accordingly, appellate courts have jurisdiction to review the denial of habeas relief. *See id.*

"For a county court at law to have habeas jurisdiction under the Texas Constitution, an applicant's liberty must be restrained." *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). "A defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (i) confined or restrained as a result of a misdemeanor charge or conviction or (ii) is no longer confined, but is subject to collateral legal consequences resulting from the conviction." *Ex parte Rinkevich*,

6

222 S.W.3d 900, 902 (Tex. App.—Dallas 2007, no pet.). An "inability to obtain employment" stemming from an applicant's "criminal history record information" being disclosed to private employers "constitutes collateral consequences" for habeas purposes. *See Ex parte Wolfe*, 296 S.W.3d at 166-67; *see also Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010) (explaining that showing of collateral consequences establishes "confinement").

"An applicant seeking misdemeanor post-conviction habeas corpus relief must establish entitlement to such relief by a preponderance of the evidence." *Ex parte Pinnock*, No. 14-17-00591-CR, 2018 WL 2106615, at *1 (Tex. App.—Houston [14th Dist.] May 8, 2018, no pet.) (mem. op., not designated for publication). Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard of review. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies "within the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, appellate courts "review the record evidence in the light most favorable to the trial court's ruling." *Kniatt*, 206 S.W.3d at 664.

"The trial court sits as the fact finder in a habeas proceeding brought under article 11.09." *Ex parte Pinnock*, 2018 WL 2106615, at *2. "In such cases, the habeas court is the sole judge of witness credibility, and we will not disturb its ruling absent a clear abuse of discretion." *Id.* "The habeas court may accept or reject any or all of any witness's testimony, even if that testimony is uncontroverted." *Id.* Similarly, a trial court is "free to believe" or "free to disbelieve" an affidavit attached to a habeas application. *See Ex parte Scott*, 541 S.W.3d 104, 117 n.13 (Tex.

7

Crim. App. 2017).  Appellate courts "imply all findings of fact that are necessary to support the habeas court's ruling" and "defer to the habeas court's implied . . . findings of fact that are supported by the record." *Ex parte Pinnock*, 2018 WL 2106615, at *2.

## DISCUSSION

In two issues on appeal, Bice asserts that the trial court abused its discretion by denying his application for writ of habeas corpus because Maysel provided ineffective assistance of counsel.

To succeed on an ineffectiveness claim, a defendant must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  "[A]n appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

To satisfy the first prong, the defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional assistance" and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  A reviewing court must strive to avoid the deleterious effects of hindsight and must be highly deferential to trial counsel. *Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813. In addition, evaluations of effectiveness are based on "the totality of the representation," *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816,

837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider "cumulative effect" of counsel's deficiencies), and allegations of ineffectiveness must be firmly established by the record, *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Furthermore, even though a defendant is not entitled to representation that is error-free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

Regarding the second prong, the requirement that there be a reasonable probability that the results would have been different means "a probability that is sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see Thompson*, 9 S.W.3d at 812. "Prejudice to the applicant from counsel's deficient performance is judged by 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Ex parte Amezquita*, 223 S.W.3d 363, 366 (Tex. Crim. App. 2006) (quoting *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005)).

*Advice Regarding Pretrial Intervention Program and Strength of State's Case*

In his first issue on appeal, Bice presents two sets of arguments contending that the trial court abused its discretion by denying his habeas application because Maysel provided ineffective assistance of counsel by failing to fully explain the requirements of the pretrial-intervention program and by misadvising him regarding the strength of the State's case. Regarding the pretrial-intervention program, Bice contends that Maysel incorrectly characterized the State's actions in this case by telling him that the $500 fee was discretionary rather than mandatory and failed to tell him that he would be allowed to pay the $500 fee in installments if he agreed to the State's offer. Moreover, Bice asserts that this inaccurate information along with

Maysel's "assurances that they would most likely prevail" led him to accept Maysel's suggestion to reject the plea offer and proceed to trial. Turning to the alleged strength of the State's case, Bice argues that Maysel failed to advise him "regarding the relative strengths and weaknesses of both sides of the case" and instead told him that the State's case was weak and that Bice had "nothing to lose by going to trial" even though the State actually had a strong case against him because there was security footage of the offense and because he was caught in possession of "items with altered tags."

Accordingly, Bice insists that Maysel's advice "to do anything other than accept the State's recommendation" of pretrial intervention fell below an objective standard of reasonableness and further asserts that if he had received effective assistance of counsel, he would have accepted the State's plea offer, been allowed to later "seek an expunction," and "avoided the injury he has suffered as a result of a criminal conviction." *Cf. Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex. Crim. App. 1987) (explaining that "an accused is entitled to effective assistance of counsel during the plea bargaining process"). As support for his assertion that Maysel did not fully inform him of the mandatory nature of the $500 fee and failed to disclose that he would not have to pay the full fee all at once, Bice points to his affidavit and to the testimony that he gave during the hearing.

As the factfinder, the trial court was tasked with determining whether Bice's affidavit and testimony were credible and what, if any, weight to give to that evidence. *See Ex parte Scott*, 541 S.W.3d at 117 n.13; *Ex parte Pinnock*, 2018 WL 2106615, at *2. When making that determination, the trial court was aided by other evidence suggesting that Maysel did discuss the terms of the offer, including the fee. For example, in Flores's and Gillis's affidavits, they listed the requirements for the intervention program and noted that Maysel demonstrated compliance

10

with all of the requirements except payment of the $500 fee. In fact, regarding the requirement that Bice be enrolled in school, Gillis explained that the proof of enrollment was displayed on Bice's phone, which Gillis stated led him to believe that Maysel had discussed the requirements with Bice. Further, Gillis related that he explained in a pretrial hearing that before the intervention program could begin, Bice would have to obtain a $100 money order to be used as a partial payment for the $500 fee and that Maysel stated that he would talk to Bice about that requirement. Regarding the events that occurred after Maysel said that he would talk to Bice, Flores stated that Maysel called her and told her that Bice could not afford to pay the fee at that time, which was consistent with the portion of Bice's testimony stating that he told Maysel that he was unable to pay the fee. Additionally, Bice also admitted in his testimony that Maysel explained the requirements of the intervention program to him, including the obligation to pay the $500 fee, and initially encouraged him to accept the plea offer. Moreover, Bice testified that Maysel was responsive to his questions that he had about the underlying proceedings.

In light of the preceding, we must conclude that this record supports an implied finding by the trial court that the portions of Bice's testimony and affidavit stating that Maysel did not fully inform him of the terms of the intervention program or that the $500 fee could be paid in installments were not credible. *Cf. Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that "the habeas court was free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea" and deferring to habeas court's findings based on credibility); *Ex parte Ali*, 368 S.W.3d 827, 840-41 (Tex. App.—Austin 2012, pet. ref'd) (explaining that "trial court would not have abused its discretion in disbelieving" statements in applicant's affidavit asserting that trial counsel provided ineffective assistance of counsel).

11

Moreover, viewing the evidence in the light most favorable to the trial court's ruling, including evidence indicating that Maysel conveyed the terms of the intervention program, we must conclude that Bice failed to meet his burden of rebutting the strong presumption that Maysel provided effective assistance of counsel. *See Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (stating that "[a]n applicant who cannot overcome this presumption by a preponderance of the evidence will not succeed in his Sixth Amendment claim").

Regarding Maysel's alleged failure to advise Bice of the strength of the State's case against him, we note as an initial matter that none of the record from the underlying proceedings was made part of the habeas record. *Cf. Mallet*, 65 S.W.3d at 63 (noting that ineffectiveness claims must be established by record). Although Bice testified at the habeas hearing that Maysel told him that there were no witnesses or surveillance footage of the crime and although Bice testified that he was surprised when a loss-prevention officer testified during the trial about surveillance footage of the alleged theft, nothing in the remainder of the habeas record supports Bice's assertion that Maysel failed to disclose to him the strength of the State's case.

When evaluating the credibility of Bice's testimony and evaluating Bice's claim that Maysel failed to advise him of the strength of the State's case, *see Ex parte Pinnock*, 2018 WL 2106615, at *2, the trial court was aided by other evidence that was inconsistent with the portions of Bice's testimony discussed above. For example, Bice also testified that Maysel seemed to have a good understanding of the case, was responsive to his questions, did not guarantee any outcome if they proceeded to trial, initially recommended accepting the State's plea offer because a trial was too risky, and explained that being placed in the intervention program would allow Bice to later have his record expunged if he complied with the terms of the offer. The State presented additional evidence that Maysel was aware of the evidence and the

12

strength of the underlying case against Bice through the portion of Flores's affidavit in which she related that Maysel told her that the case against Bice was more problematic than the case against his girlfriend because the evidence showed that Bice's girlfriend personally stole the merchandise.

Given the evidence summarized above, we must conclude that this record supports an implied finding by the trial court that the portions of Bice's testimony stating that Maysel did not inform him about the surveillance footage or about the possibility of the loss-prevention officer testifying at trial were not credible. *See Ex parte Fassi*, 388 S.W.3d at 888; *Ex parte Ali*, 368 S.W.3d at 840-41. Additionally, viewing the evidence in the light most favorable to the trial court's ruling, including the evidence indicating that Maysel was aware of the strength of the State's case and communicated that to Bice, we must conclude that Bice failed to meet his burden of rebutting the strong presumption that Maysel provided effective assistance of counsel. *See Ex parte Bowman*, 533 S.W.3d at 350.

Having determined that Bice failed to satisfy the first *Strickland* prong for both sets of arguments, we need not address Bice's arguments regarding the second prong. *See Garcia*, 57 S.W.3d at 440. Accordingly, we conclude that the trial court did not abuse its discretion by deciding that Bice was not denied the right to effective assistance of counsel and overrule Bice's first issue on appeal.

*Failure to Disclose Second Plea Offer*

In his second issue on appeal, Bice contends that Maysel provided ineffective assistance of counsel by failing to convey the terms of the second plea offer from the State. Regarding the first *Strickland* prong, Bice notes that the Supreme Court has explained that, in general, "defense counsel has the duty to communicate formal offers from the prosecution to

13

accept a plea on terms and conditions that may be favorable to the accused" and that if "defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *See Missouri v. Frye*, 566 U.S. 134, 145 (2012); *see also* ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(a) (3d ed. 1999) (recommending that defense counsel "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney"). In light of the preceding, Bice urges that Maysel's failure to communicate the second plea offer falls outside the wide range of reasonable professional assistance and resulted in his conviction. Regarding the second prong, Bice argues that he has shown that he was prejudiced because he has shown that but for Maysel's deficient performance, he would have accepted the plea offer, which would have resulted in a more favorable outcome. *See Frye*, 566 U.S. at 147 (explaining that "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel" and "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it").

As support for his assertion that Maysel failed to inform him about a subsequent plea offer by the State, Bice points to portions of his testimony and to his and Fusco's affidavits. In his affidavit and in his testimony, Bice stated that Maysel never told him about the second plea offer. Similarly, Fusco stated in his affidavit that Bice indicated that Maysel never told him about the second plea offer. Accordingly, all of the evidence supporting Bice's ineffectiveness claim stemmed from statements that he made to the trial court or statements that he made to Fusco regarding the second offer.

14

As the factfinder in this case, the trial court was tasked with determining whether Bice's statements were credible and what, if any, weight to give that evidence. *See Ex parte Scott*, 541 S.W.3d at 117 n.13; *Ex parte Pinnock*, 2018 WL 2106615, at \*2. When making those determinations, the trial court was aided by the portion of Flores's affidavit in which she explained that she relayed the terms of the new plea offer to Maysel after he stated that Bice would be unable to pay the $500 fee and that Maysel informed her that he would advise Bice of the new offer. Further, the trial court was also aided by other evidence, including Bice's testimony, demonstrating that Maysel did disclose the terms of the first plea offer to Bice.

In light of the preceding, we must conclude that this record supports an implied finding by the trial court that the portions of Fusco's and Bice's affidavits and Bice's testimony stating that Maysel did not inform Bice of the second offer were not credible. *Cf. Ex parte Fassi*, 388 S.W.3d at 888; *Ex parte Ali*, 368 S.W.3d at 840-41. Moreover, viewing the evidence in the light most favorable to the trial court's ruling, including the evidence indicating that Maysel communicated the second offer to Bice, we must conclude that Bice failed to overcome the strong presumption that Maysel provided effective assistance of counsel. *See Ex parte Bowman*, 533 S.W.3d at 350. Having determined that Bice failed to satisfy the first *Strickland* prong, we need not address Bice's arguments regarding the second prong. *See Garcia*, 57 S.W.3d at 440.

Accordingly, we conclude that the trial court did not abuse its discretion by determining that Bice was not deprived of the right to effective assistance of counsel and overrule his second issue on appeal.

## CONCLUSION

Having overruled both of Bice's issues on appeal, we affirm the trial court's order denying his application for writ of habeas corpus.

                                                _____

                                                Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   August 22, 2019

Do Not Publish

16