# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-21-00313-CR
NO. 03-21-00314-CR
NO. 03-21-00315-CR

---

Zachery Angel Lucero, Appellant

v.

The State of Texas, Appellee

---

FROM THE 51ST DISTRICT COURT OF TOM GREEN COUNTY
NOS. A-19-0597-SA-W-1, A-19-0593-SA-W-1, A-19-0600-SA-W-1,
THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Zachery Angel Lucero pleaded guilty to the offenses of aggravated robbery (appellate cause number 03-21-00314-CR), burglary of a building (appellate cause number 03-21-00313-CR), and unauthorized use of a motor vehicle (appellate cause number 03-21-00315-CR). Following a hearing on punishment, the district court sentenced Lucero to 25 years' imprisonment for the aggravated-robbery offense, 730 days in state jail for the burglary offense, and 365 days in state jail for the motor-vehicle offense, with the sentences to run concurrently. Lucero filed a motion for new trial, which was overruled by operation of law. In three points of error on appeal, Lucero asserts that the district court erred in allowing his motion for new trial to be overruled by operation of law rather than by a formal ruling and that the district court abused its discretion in failing to grant him a new trial on the ground that he

received ineffective assistance of counsel. We will affirm the judgment of conviction in 03-21-00314-CR and dismiss the other two appeals.[1]

## BACKGROUND

Based on incidents that occurred in May 2019, the State charged Lucero with aggravated robbery, burglary of a building, unauthorized use of a motor vehicle (UUMV), and possession of a controlled substance, methamphetamine, in an amount less than one gram. The aggravated-robbery charge was based on allegations that Lucero had robbed a convenience store using a firearm; the burglary charge was based on allegations that Lucero had broken into a fast-food restaurant after it had closed and had stolen money from the store; the motor-vehicle charge was based on allegations that Lucero had stolen a car and used it to drive to his apartment; and the possession charge was based on methamphetamine that was found on Lucero during the investigation into the other offenses.

In August 2019, the State made the following plea offer to Lucero's trial counsel:

In exchange for the defendant's written stipulation of evidence and plea of guilty, the State will recommend the following punishment to the Court:

15 years ID-TDCJ and restitution to the aggravated robbery to run concurrently with

600 days state jail on the burglary of a building and the UUMV; and

The State will move to dismiss possession of <1g methamphetamine pursuant to [Texas Penal Code Section] 12.45 and ask that case be taken into consideration in the punishment of the aggravated robbery.

---

[1] As we explain in more detail below, Lucero has agreed to dismiss his appeals in 03-21-00313-CR and 03-21-00315-CR.

In return for the State's recommendation to the Court on punishment, the defendant must agree to the following:

    a.  plead guilty to the indictment

    b.  execute a written stipulation of evidence describing the indictment; and

    c.  waive appellate rights.

This offer is revocable until / unless accepted and is not enforceable until / unless accepted. The offer is withdrawn if not accepted one week prior to the contested hearing set in this case.

At Lucero's arraignment in December 2019, the parties briefly discussed Lucero's eligibility for probation[2] and the State's plea offer:

| [The Court]: | Has the defendant filed an election as to punishment yet? |
| --- | --- |
| [Trial counsel]: | He has not, Your Honor. With this being an aggravated case, there's certain punishment issues that need to be explored further and there's still—Actually we are discussing possibly waiving a jury, which would allow him to possibly—would create an opportunity for him to be on a deferred probation. So there's still some punishment issues outstanding, Judge, but we will. |
| [The Court]: | I will make a note . . . that y'all are still making that decision. Of course, you have got a bit more time to do that. I presume the defendant has not yet filed an |

---

[2] Eligibility for probation depends on various factors, including the nature of the offense charged and whether the defendant goes to the court or jury for punishment. Although aggravated robbery is not an offense eligible for "regular" probation when the defendant goes to the court for punishment, *see* Tex. Code Crim. Proc. art. 42A.054(a)(11), it is eligible for deferred-adjudication probation, *see id*. art. 42A.102; *see also Jackson v. State*, 550 S.W.3d 238, 245–46 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (discussing deferred-adjudication-probation eligibility for defendant charged with aggravated robbery).

3

application for probation?

[Trial counsel]: We have not, Judge.  I believe he is probation eligible.  The history that he does have is out of New Mexico.  The way I interpret it, through the judgments, is it was a—It was a deferred that was successfully completed.  The State may have another position on that, but I—Everything I see, he is eligible, Judge. I wanted to—

[Prosecutor]: I believe he is probation eligible. I'm not certain that those probation terms have been completed, but . . . [e]ither way . . . he would be eligible.  So I think he is probably probation eligible from a jury on the agg rob, but not from a judge unless he were to plead guilty.

[Trial counsel]: And he would be eligible for a deferred before a judge?

[Prosecutor]: Correct.

[Trial counsel]: Those are—That's what I was discussing earlier, Judge.

[The Court]: Correct.

[Trial counsel]: That's why we haven't—

[The Court]: You will evaluate that and—

[Trial counsel]: Yes.

[The Court]: And consult with your client on this case?

[Trial counsel]: Yes.

. . . .

[The Court]: Are there plea negotiations ongoing?

4

| [Trial counsel]: | The State has made an offer. I have conveyed that to my client. He has rejected that. There have been no other offers made [other] than the one that has been standing. |
|---|---|
| [The Court]: | All right. |
| [Prosecutor]: | True. And I'll maintain that offer until noon Friday.[3] |
| [The Court]: | All right, sir. What [Prosecutor] is indicating is although you have rejected that offer, between now and Friday at noon if you were to change your mind that offer is still outstanding and able to be accepted. Do you understand that, sir? |
| [The Defendant]: | Yes, ma'am. |

On December 17, 2019, Lucero, after being admonished by the district court on the full range of punishment for each offense,[4] pleaded guilty, without a recommendation on punishment, to the charges of aggravated robbery, burglary of a building, and unauthorized use of a motor vehicle.[5] Trial counsel then asked the district court to defer its findings of guilt because counsel planned on requesting deferred-adjudication probation at the conclusion of the hearing. The district court agreed to defer its findings and proceeded to hear evidence on punishment, including testimony from multiple witnesses for both the State and Lucero. At the

---

[3] The arraignment was on Tuesday, December 3, 2019, and that Friday was December 6, 2019.

[4] The range of punishment for aggravated robbery, a first-degree felony, is imprisonment for life or between 5 and 99 years. *See* Tex. Penal Code § 12.32(a). The range of punishment for burglary of a building and unauthorized use of a motor vehicle, both state jail felonies, is confinement between 180 days and two years. *See id.* § 12.35(a).

[5] Despite Lucero's rejection of the plea offer, the State still agreed to dismiss the drug-possession charge, and the district court ordered that charge dismissed.

conclusion of the hearing, the district court found Lucero guilty of the charged offenses and sentenced him to 25 years' imprisonment for the aggravated-robbery offense, 730 days in state jail for the burglary offense, and 365 days in state jail for the motor-vehicle offense, with the sentences to run concurrently.

Lucero's trial counsel, who was disbarred in February 2020 for professional misconduct in an unrelated matter, filed a notice of appeal in each case. However, the notices of appeal were untimely, and this Court dismissed the appeals for want of jurisdiction. *See Lucero v. State*, Nos. 03-20-00064-CR, 03-20-00065-CR, & 03-20-00066-CR, 2020 WL 938976, at *1 (Tex. App.—Austin Feb. 27, 2020, no pet.) (mem. op., not designated for publication). After the Court of Criminal Appeals granted Lucero an out-of-time appeal in each case, *see Ex parte Lucero*, Nos. WR-92,771-01, WR-92,771-02 & WR-92,771-03, 2021 WL 2560173 (Tex. Crim. App. June 23, 2021) (per curiam) (not designated for publication), Lucero's appointed appellate counsel filed a motion for new trial, raising the issue of ineffective assistance of counsel. In an affidavit attached to the motion, Lucero averred:

> [Trial counsel] only described to me that the District Attorney ("DA") had made an offer on my case that was generally described as 15-25 years. I am not sure what the offer was on each particular case, but we talked most about [the aggravated-robbery case] which was a first-degree felony and I understood that case was a bigger felony and I could be sentenced from 5-99 or life. I also understood the lesser felonies would run concurrent with the 1st degree case sentence and that an offer of 15 years had been made on that 1st degree case.

> However, [trial counsel] made me believe that if I turned down the plea offers, pled guilty to the three cases, and ask[ed] the Court to determine punishment, that he would be able to get me probation and [drug] treatment on all the cases. I relied on that being accurate when I entered my guilty pleas and I was expecting to receive probation and treatment as he had assured me I would.

I feel like I was not properly advised about the plea offers and the possible outcome of the cases if I rejected the plea offers. If he had explained to me that it was not certain I would get the probation and treatment, I would have accepted the 15-year offer on the 1st degree felony and then accepted the offers on the other two cases also.[6]

The district court held a hearing on Lucero's motion. At the hearing, Lucero testified as follows:

Q    Mr. Lucero, before you went into that hearing that day on the sentencing, did [trial counsel] tell you specifically what he thought the outcome of that hearing would be?

A    No. He told me that there was fifteen to twenty-five years on the table, but he told me if I pled guilty to my charges he'd probably get me probation or treatment. That's why I went to trial.

Q    Okay. Now, when you say he told you that you would probably get probation, did you rely on what he told you to mean what, that you were going to get probation if you pled guilty or you were just hoping you would get probation?

A    He told me—He told me that he could get me probation.

Q    Okay. So if you had known that the probation was not any form of a guarantee—In other words, he—When he said he could get you that, you—And if you took it to mean that that would be the outcome if you pled guilty, would you have accepted that original fifteen-year plea offer that you had received if you knew you were taking a chance to get probation as opposed to believing that he could get it for you?

---

[6] Lucero also averred that trial counsel did not discuss with him the "need[] to bring witnesses to the hearing" on punishment, "never asked [Lucero] for a witness" on punishment, and "failed to properly question the witnesses that were called by the State." However, Lucero abandoned these allegations at the hearing on the motion for new trial, and he answered in the affirmative when the district court asked him if he was "not taking issue with anything [trial counsel] did at the actual Punishment trial in this case."

A Yes.  If he would have told me I—If he would have told me that it could have been twenty-five.  But if he told me like, 'Fifteen is your best offer,' I would have took the fifteen.  But since he told me I can get probation and treatment, that's why I went to trial.

On cross-examination, Lucero acknowledged that before pleading guilty, he had signed written admonishments that trial counsel had discussed with him, including one stating that "there was no agreement as to punishment," and that the district court had admonished him that "the whole range of punishment was available."  The State also elicited the following testimony from Lucero:

Q In your affidavit you don't say [trial counsel] promised you probation and treatment.  You say he made you believe that if you pled guilty and asked the Court to set punishment that he would be able to get you probation and treatment.

A Correct.

. . . .

Q All right. Mr. Lucero, so that was true?  That part of the affidavit was true?

A Yes.

Q Is it also true when you say [trial counsel] guaranteed you he could get you probation and treatment?

A Yes.  When he came with an offer he said there was fifteen to twenty-five years on the table.  Then he—He said—When I was going to go back to court he said—He went and talked to me and I still had fifteen to twenty-five years, but he said if I pled guilty to these he could probably get me probation and treatment.  So that's why we went—That's why we took it to trial.  If he would have turned around and said, 'You could get the

8

twenty-five years'—If he would have said, 'Fifteen is looking better for you,' I would have signed for the fifteen. But since he told me that he could get me probation or treatment, that's why I went all the way to trial.

Q       So—I'm sorry to get real picky with you about it. You just said he said he could probably get you probation and treatment. Was that what he said or do you remember exactly?

A       I don't remember exactly how he told me, but he told me probation and treatment was in there. I was—That's what he was basically—That's what he was trying to—basically counting on was probation and treatment.

Q       That's what he was going to try to get for you?

A       Yes.

Q       But did you realize that, you know, the judge advised you and you went into that Punishment trial knowing you might not get probation and treatment? You could get anywhere in the whole punishment range. You understood that going into that hearing, didn't you?

A       Correct.

Lucero's stepmother, Dorothy Ortega, also testified at the hearing on the motion for new trial. Ortega testified that trial counsel spoke to her and her husband about the State's plea offer and "advised us to talk to [Lucero] and told us to convince him not to sign for the fifteen-year plea, to—that he was guaranteeing us that he could get him probation." On cross-examination, Ortega elaborated on what trial counsel told them:

Well, he told us that he had already talked to Zach about not signing for the fifteen years. So he told us, 'You guys are his parents. I would like for y'all to convince him to not sign.' He said, 'I have already spoken to him about not signing, not signing for the fifteen.' He said, 'But I'm only his attorney.' He

9

said, 'You guys are his parents.' He said, 'Convince him not to sign for the fifteen years.' He said so—He said, 'I guarantee—' He said, 'I can get him probation.' He said, 'He'll possibly have to do some treatment, maybe a year or two of treatment'; but he said, 'I can get him probation.' So he told us he was guaranteed he could get us—he could get him probation.

When asked if trial counsel used the word, "Guaranteed," Ortega testified, "Yes." Ortega also testified that she remembered telling Lucero to plead guilty but could not remember if she and her husband had "assisted on the guilty decision or not." However, at the earlier hearing on punishment, Ortega testified that she and her husband had assisted Lucero in his decision:

Q     Okay. Is it true prior to this proceeding we all got together and you have been able to hear some of the evidence that might be presented if we went to a trial?

A     Yes.

Q     Okay. And you assisted Mr.—I mean your son in sort of making a decision to plead guilty today; and it was a family decision, right?

A     Yes.

On re-direct examination, Lucero elicited the following additional testimony from Ortega:

Q     Okay. And if [trial counsel] had said to you, 'Well, there is a possibility we might be able to. The judge can give him five to ninety-nine or life or the judge can give him probation, so he needs to decide what he wants to do'—Is that how he described it to you, that it was totally up to the judge, that he was just hoping that he would get him probation; or did it sound much more certain to you?

A     He didn't—He said there was a possibility of the prison time; but he said, 'I'm going to guarantee you—' He said the—He said, 'I can fight for the probation.' He said, 'I'll guarantee you I can get him probation time.'

10

Q      Okay.

A      He said, 'That's why I don't want him to sign for the fifteen years.'

No other witnesses, including trial counsel, testified at the hearing or submitted affidavits.  Exhibits admitted into evidence at the hearing included a copy of the State's plea offer; a pretrial hearing checklist showing that the plea offer had been rejected by Lucero but remained open until noon on December 6, 2019; a February 2020 judgment of disbarment for Lucero's trial counsel; and a copy of the district court's written admonishments to Lucero, including an admonishment initialed by Lucero and trial counsel that Lucero understood the range of punishment for a first-degree felony.  The district court also took judicial notice of the earlier proceedings in the case.  At the conclusion of the hearing, the district court informed the parties that it was "going to take this one under advisement."  The district court added that it was "aware of the deadline for the Court to make a ruling, if it's not going to be overruled by operation of law, and so I will try to get a ruling out fairly quickly."  However, the district court made no formal ruling on the motion, and it was later overruled by operation of law.

**DISCUSSION**

**Failure to make a formal ruling**

In his first point of error, Lucero asserts that the district court erred in not making a formal ruling denying his motion for new trial.  According to Lucero, by allowing the motion to be overruled by operation of law, the district court "effectively denied" Lucero his right to a hearing and denied him an opportunity to request findings of fact and conclusions of law.

Although a defendant has no "absolute right" to a hearing on his motion for new trial, a trial court abuses its discretion in failing to hold a hearing "if the motion and

11

accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). In this case, the district court held a hearing on Lucero's motion. However, there is no requirement that once a trial court holds a hearing, it is obligated to make a formal ruling on the motion. Although "[t]he granting of a motion for new trial must be accomplished by written order," Tex. R. App. P. 21.8(b), there is no such rule for the denial of a motion for new trial, which may be overruled by operation of law, *id.* 21.8(c). In arguing otherwise, Lucero cites to *Montelongo v. State*, a case in which the Court of Criminal Appeals held that to preserve error in the denial of a hearing on a motion for new trial, the defendant does not need to object. *See* 623 S.W.3d 819, 823–24 (Tex. Crim. App. 2021). But that case says nothing about whether a trial court errs in failing to make a formal ruling denying a motion for new trial after holding a hearing on the motion, which is what occurred here. Moreover, a trial court is not required to make oral or written findings of fact when ruling on a motion for new trial, even upon request by the losing party. *See* Tex. R. App. P. 21.8(b), *Thomas v. State*, 445 S.W.3d 201, 214–15 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). There is nothing in the record to suggest that the district court, if it had denied the motion by written order, would have granted a request by Lucero to file findings of fact and conclusions of law. Thus, we cannot conclude that the overruling of the motion for new trial by operation of law instead of by order, even if erroneous, harmed Lucero. *See* Tex. R. App. P. 44.2(b).

We overrule Lucero's first point of error.

**Merits of motion**

In his second point of error, Lucero argues that the district court abused its discretion in failing to grant him a new trial on the ground of ineffective assistance of counsel during the plea-bargain process. In his third point of error, Lucero argues that when granting the new trial, the district court should set aside the 25-year sentence, order the State to reoffer Lucero the original 15-year plea bargain, and exercise its discretion to accept or reject the State's recommendation of 15 years.

### *Standard of review*

We review a trial court's ruling on a motion for new trial for abuse of discretion, reversing the ruling only "if it is arbitrary or unsupported by any reasonable view of the evidence." *Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021). "In determining whether the trial court abused its discretion, an appellate court must not substitute its own judgment for that of the trial court, and it must uphold the trial court's ruling if it is within the zone of reasonable disagreement." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). "The trial court's ruling is within the 'zone of reasonable disagreement' when there are two reasonable views of the evidence." *Id*.

"We afford almost total deference to a trial court's fact findings, view the evidence in the light most favorable to the trial court's ruling, and reverse the ruling only 'if no reasonable view of the record could support' it." *Najar*, 618 S.W.3d at 371 (quoting *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)). "In the absence of express findings, we must presume all findings in favor of the prevailing party." *Id*. Under this standard, "the trial judge has 'the right to accept or reject any part' of a witness's testimony when ruling on a motion

13

for new trial," *id*. (quoting *Beck v. State*, 573 S.W.2d 786, 791 (Tex. Crim. App. 1978)), and that discretion applies to both live testimony and testimony by affidavit, *id*. (citing *Charles v. State*, 146 S.W.3d 204, 213 (Tex. Crim. App. 2004)). Moreover, "the trial court is the exclusive judge of the credibility of the evidence, regardless of whether the evidence is controverted," because "even uncontroverted evidence at a motion for new trial hearing may be disbelieved by the trial court." *Id*. at 372. "A trial court is not bound to believe a particular fact unless it is conclusively established" by, for example, "formal stipulation" or "indisputable visual evidence." *Id*. "But if there are 'at least two' plausible interpretations of the evidence, it is within the trial court's exclusive purview to decide which interpretation to believe." *Id*.

### *Ineffective assistance of counsel*

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To establish ineffective assistance of counsel, an appellant must demonstrate by a preponderance of the evidence both deficient performance by counsel and prejudice suffered by the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). To prove deficient performance, the appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Scott*, 541 S.W.3d 104, 115 (Tex. Crim. App. 2017). To prove prejudice, the appellant must show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been

different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Burch*, 541 S.W.3d at 820. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

The district court would not have abused its discretion in finding that Lucero failed to make either showing here. Regarding deficient performance, Lucero's claim, if true, that trial counsel advised him to reject the plea offer because counsel could "guarantee" him probation would fall below an objective standard of reasonableness. *See, e.g., Rodriguez v. State*, 424 S.W.3d 155, 159 (Tex. App.—San Antonio 2014) (concluding that similar advice to defendant to reject plea offer because "it would be easy to obtain an acquittal" amounted to deficient performance), *overruled on other grounds by* 470 S.W.3d 823 (Tex. Crim. App. 2015). However, it would not have been outside the zone of reasonable disagreement for the district court to disbelieve Lucero's claim, particularly considering that Lucero was inconsistent in describing what trial counsel had told him. In his affidavit, Lucero averred that trial counsel made him believe that if he turned down the plea offer, pleaded guilty, and asked the Court to determine punishment, then trial counsel "would" be able to get him probation and drug treatment. But at various points during the hearing on the motion for new trial, Lucero testified that trial counsel told him that he "could" get Lucero probation, that he "can" get Lucero probation and treatment, and that he "could probably" get Lucero probation and treatment. In response to this, the State asked Lucero, "You just said he said he could probably get you probation and treatment. Was that what he said or do you remember exactly?" Lucero testified, "I don't remember exactly how he told me, but he told me probation and treatment was in there." He added, "I was—That's what he was basically—That's what he was trying to—basically

15

counting on was probation and treatment." The State inquired further, "That's what he was going to try to get for you?" Lucero answered, "Yes." Based on this evidence, it would not have been unreasonable for the district court to find that Lucero's claim regarding trial counsel's advice was not credible.

There was another reason for the district court to disbelieve Lucero's claim. In the affidavit attached to his motion for new trial, Lucero averred that trial counsel did not discuss with him the "need[] to bring witnesses to the hearing" on punishment and "never asked [Lucero] for a witness" on punishment. However, the record reflects that trial counsel called four witnesses to testify at the punishment hearing on Lucero's behalf: his father, his step-grandmother, his stepsister, and his stepmother. Lucero's stepmother, Dorothy Ortega, testified at the hearing on the motion for new trial that she and the other family members had appeared at the punishment hearing at the direction of trial counsel. When the State first asked Lucero about his claim regarding the lack of witnesses, he testified that "[t]here was no witnesses on anything." The State then elicited the following testimony:

Q     For the Punishment hearing [trial counsel] didn't ask you about witnesses?

A     No.

Q     You remember that [trial counsel] called four witnesses on your behalf, don't you?

A     I don't—I don't remember that. I don't see what witnesses were called, because I never gave him any names.

Q     Don't you remember in the Punishment hearing that he called Sally Ortega, Albert Lucero, Aliyah Ortega and Dorothy Ortega on your behalf?

16

A Yes.

It would not have been unreasonable for the district court to find that if Lucero had difficulty remembering that trial counsel called witnesses on his behalf, Lucero's recollection of counsel's advice regarding the plea offer might have been questionable as well.

Similarly, it would not have been unreasonable for the district court to discount the testimony of Ortega, Lucero's stepmother, that trial counsel had "guaranteed" that he could get Lucero probation. Ortega had difficulty remembering whether she had assisted Lucero in his decision to plead guilty, even though she testified at the punishment hearing that she had done so and that it was a "family decision." Because she had difficulty remembering that, the district court could have discounted Ortega's memory regarding other matters from the trial, including trial counsel's advice on Lucero's likelihood of probation. Moreover, Ortega testified that trial counsel had told her that there was at least a possibility that Lucero could get prison time and that counsel would "fight" for probation. Such statements are inconsistent with a "guarantee" of probation and would support a finding by the district court that Ortega might have either misunderstood or misrepresented what trial counsel had told her. At any rate, it would not have been outside the zone of reasonable disagreement for the district court to find that the testimony of both Lucero and his stepmother was self-serving and biased and to disbelieve their testimony for that reason. *See Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (when considering motion for new trial, "[t]he court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted").

Lucero's failure to prove deficient performance is fatal to his ineffective-assistance-of-counsel claim. *See Strickland*, 466 U.S. at 697; *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). However, even if he had satisfied his burden to prove that trial counsel had provided him erroneous advice regarding the likelihood that he could obtain probation, Lucero would still be required to prove that he suffered prejudice as a result of that advice. "[T]o establish prejudice in a claim of ineffective assistance of counsel in which a defendant . . . rejects a plea-bargain because of bad legal advice, the applicant must show a reasonable probability that: (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain." *Ex parte Argent*, 393 S.W.3d 781, 784 (Tex. Crim. App. 2013).

Here, although Lucero testified that he would have accepted the plea offer if not for trial counsel's advice, the district court was free to believe that his testimony was self-serving. *See Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Lucero was admonished of the full range of punishment for aggravated robbery, which was 5 to 99 years' imprisonment.

Lucero also failed to show a reasonable probability that the trial court would not have refused to accept the plea bargain. At the punishment hearing, the district court heard extensive evidence regarding the circumstances surrounding the aggravated robbery and the other offenses to which Lucero had pleaded guilty, including detailed testimony from the store clerk whom Lucero robbed at gunpoint, the manager of the restaurant that Lucero had burglarized, the owner of the car that Lucero had stolen, and the officers who investigated the offenses. Additionally, the district court heard evidence that while Lucero was in jail awaiting

18

trial, he was involved in physical altercations with two other inmates and had a criminal history of drug offenses committed in New Mexico. Moreover, the State argued at the punishment hearing for a sentence of at least 20 years' imprisonment. The district court sentenced Lucero to 25 years' imprisonment. Considering that the district court determined that 20 years' imprisonment was not sufficient, we cannot conclude on this record that Lucero proved that there was a reasonable probability that the trial court would not have rejected the State's recommendation of 15 years' imprisonment.

We overrule Lucero's second point of error and need not consider his third point of error regarding the appropriate remedy if we had sustained his second point of error.

**Dismissal of 03-21-00313-CR and 03-21-00315-CR**

In his brief, Lucero's appellate counsel wrote that he would "only be proceeding on this appeal in Cause No. 03-21-00314-CR and will not be filing a brief in Cause No. 03-21-00313 and Cause No. 03-21-00315." Counsel further represented that he would "file a pleading to dismiss the two additional appeals." However, no such pleading or motion to dismiss was filed, and this Court abated the appeals and remanded the cases to the district court for a hearing to determine whether Lucero desired to prosecute those appeals and, if so, whether counsel had abandoned them. *See Lucero v. State*, Nos. 03-21-00313-CR & 03-21-00315-CR, 2022 WL 2707921, at *1 (Tex. App.—Austin July 13, 2022) (per curiam order and mem. op.) (not designated for publication).

At the hearing, which was held via videoconference, counsel explained that he had already spoken to Lucero about dismissing the appeals and that Lucero had agreed to dismiss them, but counsel had forgotten to file a motion to dismiss. When counsel remembered to do so,

19

he realized that in criminal appeals, a motion to dismiss had to be signed by both counsel and appellant. *See* Tex. R. App. P. 42.2(a). Counsel stated that he had not had an opportunity before the hearing to have Lucero sign the motion. The district court then asked Lucero:

> [The Court]: So is it your desire to have these two cases, the appeal on it, dismissed?
>
> [Lucero]: Yes, ma'am.
>
> [The Court]: Okay. [Counsel] will send a document for you to sign. But I am going to make a finding, based on what you have told me, that you do not want to appeal the burglary of a building case or the unauthorized use of a motor vehicle case. And that it was just a procedural problem with not getting that clarified for the Court of Appeals, alright?
>
> [Lucero]: Okay. Yes, ma'am.

The district court also made written findings of fact and recommendations on the matter, including the following:

> Zachery Angel Lucero appeared in person by Zoom, his attorney [] appeared in person by Zoom, and District Attorney [] appeared in person by Zoom. A record of this hearing was made.
>
> The trial court after calling the cases explained to Appellant Lucero the purpose of the hearing. The trial court explained that two of his three cases were currently before the [trial] court. Cause No. A-19-0597-SA, where he had been convicted of burglary of a building and Cause No. A-19-0600-SA, where he had been convicted of unauthorized use of a motor vehicle were the subjects of this hearing.
>
> Appellant's attorney [] on the record explained why Appellant had decided to not appeal these cases and why he had decided to appeal Cause No. A-19-0593-SA. Appellant agreed with his attorney. Appellant's attorney advised Appellant that

he would send an affidavit that Appellant needs to sign in order to withdraw his appeal in A-19-0597-SA-W-1 and a separate affidavit to sign to withdraw his appeal in A-19-0600-SA-W-1.

The trial court asked Appellant, on the record, if he wanted to appeal Cause No. A-19-0597-SA-W-1. Appellant said, on the record, that he did not.

The trial court asked Appellant, on the record, if he wanted to appeal Cause No. A-19-0600-SA-W-1. Appellant said, on the record, that he did not.

The trial judge finds that Appellant does not want to appeal the above two cases and recommends that he should be allowed to withdraw his appeal.

The hearing was held and the findings were made on August 19, 2022. As of today's date, we still have not received a motion to dismiss. However, because the record establishes that Lucero has agreed to dismiss the appeals in 03-21-00313-CR and 03-21-00315-CR, we shall dismiss those appeals to avoid further delay in these proceedings. *See* Tex. R. App. P. 2 ("On a party's motion or on its own initiative an appellate court may—to expedite a decision or for other good cause—suspend a rule's operation in a particular case and order a different procedure.").

## CONCLUSION

We affirm the judgment of conviction in 03-21-00314-CR. We dismiss the appeals in 03-21-00313-CR and 03-21-00315-CR.

_____

Gisela D. Triana, Justice

21

Before Chief Justice Byrne, Justices Triana and Smith

03-21-00313-CR: Dismissed

03-21-00314-CR: Affirmed

03-21-00315-CR: Dismissed

Filed:   October 31, 2022

Do Not Publish